STATE *vs.* POOLER, ALIAS POULIN
STATE *vs.* PAUL CARON
STATE *vs.* RALPH LABBE.

Kennebec.    Opinion July 21, 1945.

*William Niehoff,* County Attorney,

*Henry Heselton,* County Attorney, for the State.

*F. Harold Dubord,* for respondents Pooler and Caron.

*Benjamin Berman,*

*David V. Berman,* for respondent Ralph Labbe.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

MANSER, J. There are three respondents who were indicted jointly with other persons for conspiracy to engage in maintaining and operating lotteries. Thirteen cases were

argued together as they present essentially the same issues of law.

The respondent, Pooler alias Poulin, was indicted in seven cases with another person in each case, but not with either of the two other respondents whose cases are before the Court. The indictments in these cases related to lotteries designated as "Old Reliable."

The respondent, Caron, was indicted in six cases with one other person in each case. In four of these the other persons are not before the Court.

The respondent, Labbe, was indicted in two cases and was a joint respondent with Caron. Indictments in the six cases relating to Caron and Labbe concern a lottery designated as "Pay Check."

The seven cases which involved Pooler alias Poulin appear in one record. In three of the cases, sentences were imposed aggregating $500 in fines and three months' imprisonment. The other four cases were placed on file.

The cases involving Caron and other persons, and Caron and Labbe, appear in one record. In three of them, sentences were imposed against Caron, aggregating $350 in fines and two months' imprisonment. In the two cases which involve Labbe, a fine of $250 was imposed in one and a sentence of two months' imprisonment in the other.

Each respondent, after entering a plea of "Not guilty" in the cases against him, filed general demurrers to the indictments, and comes forward upon exceptions to the action of the presiding Justice in overruling the same. The issue is the sufficiency of the indictments.

The statute relating to conspiracies as it existed at the time of the indictments is now found in R. S., 1944, c. 117, §25, and reads as follows:

"If two or more persons conspire and agree together, with the fradulent or malicious intent wrong-

fully and wickedly to injure the person, character, business, or property of another; or for one or more of them to sell intoxicating liquor in this state in violation of law to one or more of the others; or to do any illegal act injurious to the public trade, health, morals, police, or administration of public justice; or to commit a crime punishable by imprisonment in the state prison, they are guilty of a conspiracy, and every such offender, and every person convicted of conspiracy at common law, shall be punished by a fine of not more than $1,000, or by imprisonment for not more than 10 years."

The indictments were drawn under this statute. In most of them the charging portion, after giving the date, reads:

"at Waterville in said County of Kennebec, feloniously did combine, conspire and agree together, with fraudulent intent, wrongfully and wickedly to do a certain illegal act injurious to the public morals to wit, did then and there conspire and agree together with such intent wrongfully and wickedly to engage in maintaining and operating a lottery and to receive, sell and offer for sale lottery tickets, the same being a scheme and device of chance known as "Old Reliable" (or "Pay Check"), a more particular description of which is to your Grand Jurors unknown, in violation of the laws of the State of Maine."

The statute prohibiting lotteries and providing punishment for participation therein, as it existed at the time of the indictments, is now found in R. S. 1944, c. 126, §18, and so much thereof as is pertinent reads as follows:

"Every lottery, policy, policy lottery, policy shop, scheme, or device of chance, of whatever name or description, . . . is prohibited; and whoever is concerned therein, directly or indirectly, by making, writing, printing, advertising, purchasing, receiving, selling, offering for sale, giving away, disposing of, or having in possession with intent to sell or dispose of, any ticket, certificate, share or interest therein, slip, bill, token, or other device purporting or designed to guarantee or assure to any person or to entitle any person to a chance of drawing or obtaining any prize or thing of value to be drawn in any lottery, policy, policy lottery, policy shop, scheme, or device of chance of whatever name or description; . . . or who in any manner aids therein, or is connected therewith, shall be punished by a fine of not less than $10, nor more than $1,000, to be recovered by complaint or indictment to the use of the county, and he may further be punished by imprisonment for 30 days on the 1st conviction; 60 days on the 2nd conviction, and 90 days on the 3rd conviction.'

The contentions of the respondents may be summarized as follows: The indictments are insufficient because

(1)   Under the statute a lottery cannot be regarded as an act injurious to public morals;

(2)   The indictments cannot be upheld as common law conspiracies because of insufficiency as to acts alleged;

(3)   The indictments are defective because the legislature did not intend to make a felony out of a conspiracy to commit a misdemeanor; and further, the conspiracy statute relates to crimes punishable by imprisonment in the State prison and, therefore, has no application to misdemeanors;

(4)   Conspiracies to operate lotteries are in and of them-

selves violations of the lottery statute under the language thereof and accordingly cannot be punishable under the conspiracy statute;

(5) All the indictments except one are defective for failure to set forth that the acts which were to be the purposes of the conspiracies were to take place in the State of Maine.

With reference to the contention that a lottery cannot be regarded as injurious to public morals, comment is hardly necessary.

Though lotteries in years past were at times and for special purposes permitted or regulated by law, there is now practical unanimity of legislative and judicial thought as expressed in statutes and decisions, that lotteries are public nuisances, subversive of morals, and contrary to the interests of society and of the state and nation. This is but the expresssion of the public conscience as formulated into law.

As summed up in 34 Am. Jur., Lotteries, §19:

"experience demonstrated the evil tendency and effect of such schemes and the need for public control and regulation."

"It is generally recognized that laws for the suppression of lotteries are in the interest of the morals and welfare of the people of the state, and are therefore a legitimate exercise of its police powers."

Scathing is the denunciation of the United States Supreme Court, written in 1849, in *Phalen* v. *Virginia,* 8 Howard 163, 49 U. S., 163, 168, 12 L. Ed., 1030, as follows:

"The suppression of nuisances injurious to public health or morality is among the most important du-

> ties of government. Experience has shown that the common forms of gambling are comparatively innocuous when placed in contrast with the widespread pestilence of lotteries. The former are confined to a few persons and places, but the latter infects the whole community; it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor; it plunders the ignorant and simple."

This comment was quoted with approval in 1897 in *Douglas* v. *Kentucky*, 168 U. S., 488, 18 S. Ct., 199, 42 L. Ed., 553. It is as apt to present conditions as it was on the former occasions.

As to the second contention, it appears to be predicated upon a hoped-for finding sustaining the first claim that a conspiracy to engage in maintaining and operating lotteries is not against public morals, and that the indictments must therefore be sustained, if at all, as alleging a conspiracy at common law. Having found against the respondents on the first issue, it is unnecessary to consider or discuss the second, except to say that it is without merit in any event.

Regarding the third contention, it is claimed that by means of the conspiracy statute the state seeks to convert a misdemeanor under the lottery statute, into a felony. It is also urged that the conspiracy statute contains a provision to the effect that a combination "to commit a crime punishable by imprisonment in the state prison" is a conspiracy, and hence the statute was intended to have application only to such substantive offenses as were felonies. Examination of the conspiracy statute clearly negatives any such intention. The clause cited is but one of several offenses specifically denominated. True it is that a wide discretion is given to the court as to punishment, and undoubtedly because of the wide range of criminal turpitude which may be experienced in the various sorts of conspiracies. So, in the present

case, we find the aggregate sentences against Pooler to be $500 in fines and three months' imprisonment; against Caron $350 in fines and two months' imprisonment; and against Labbe $250 in fines and two months' imprisonment. The statute says "shall be punished by a fine of not more than $1,000, or by imprisonment for not more than 10 years." In the cases here considered, the trial court imposed sentences applicable to the grade of misdemeanors. The court is properly given the power to make the punishment fit the crime.

Legislatures and courts have long recognized that a confederacy or conspiracy to effect criminal objects, creates additional power to cause injury, and is more sinister and subversive of public morals than the commission of the crime itself by a single individual. 11 Am. Jur., Conspiracy, §§6, 9.

In *Clune* v. *United States*, 159 U. S., 590 at 595, 16 S. Ct., 125, 40 L. Ed., 269, the Court said:

> "A conspiracy to commit an offense is denounced as itself a separate offense, and the punishment therefor fixed by the statute, and we know of no lack of power in Congress to thus deal with a conspiracy. Whatever may be thought of the wisdom or propriety of a statute making a conspiracy to do an act punishable more severely than the doing of the act itself, it is a matter to be considered solely by the legislative body. *Callan* v. *Wilson*, 127 U. S., 540, 555. The power exists to separate the conspiracy from the act itself and to affix distinct and independent penalties to each."

The combination of two or more persons by concerted action to commit a crime, whether it be of the grade of a felony or only of a misdemeanor, is an indictable offense

made punishable by the conspiracy statute. *State* v. *Vermette*, 130 Me., 387, 156 A., 807.

The next contention is that the language of the lottery statute is all-inclusive as to participants in lotteries as it provides that "whoever is concerned therein, directly or indirectly," "or who in any manner aids therein, or is connected therewith, shall be punished . . ." Argument is that this is tantamount to the offense described in the conspiracy statute. The lottery statute, however, is directed against persons acting individually. The conspiracy statute is designed to provide punishment for a combination of persons acting in concert to accomplish an illegal object. The reason for the legislation has heretofore been pointed out. *Clune* v. *United States,* supra. The elements of proof may be essentially different and the crime of conspiracy more reprehensible.

Upon the final proposition that all but one of the indictments are defective for failure to set forth that the acts which concerned the lotteries were to take place in this jurisdiction, contention rests upon the representation that after the allegation of conspiracy at Waterville, the purpose thereof is alleged as follows: "and to receive, sell and offer for sale lottery tickets," without averment of the place where these acts were to be performed.

It is to be borne in mind, however, that, as stated in *State* v. *Parento*, 135 Me., 353, 197 A., 156, 157, in quoting from leading cases in our own jurisdiction:

> "The conspiracy is the gist of the indictment, and though nothing be done in prosecution of it, it is a complete and consummate offense, of itself." *State* v. *Ripley et al*, 31 Me., 386, 388.
> ". . . the gravamen of conspiracy is 'combination,' 'concerted action' and 'unlawful purpose'." *State* v. *Trocchio et al.*, 121 Me., 368, 375.

"If the conspirators carry out, or attempt to carry out the object of the conspiracy, that fact may be alleged in aggravation of the offence, and given in evidence to prove the conspiracy." *State* v. *Mayberry,* supra, page 238.

". . . overt acts are laid merely as evidence of the principal charges." *State* v. *Murray et al,* 15 Me., 100, 103."

The distinction which the respondents attempt to set up in the present case is that a lottery is not an offense at common law, and therefore a conspiracy to maintain and operate a lottery must be alleged to be designed to become effective in this state or in some state which, by statute, makes lotteries unlawful.

Although it has been noted that in most, if not all, jurisdictions lotteries are now prohibited by statute, yet the ingenuity of counsel suggests that, as our Court does not take judicial notice of the statutory law of other states, it cannot be assumed that the respondents did not intend to maintain a lottery in some state where it might be lawful. If there be such a state, then, say counsel for the respondents, the indictments have not negatived an intent to carry on a legal project in that particular jurisdiction.

As the conspiracy is alleged to have been committed in this state, and is made by statute a criminal offense therein, it would appear that no refinement of pleading should make it necessary to negative a purpose to commit overt acts in some other jurisdiction where the offense was not prohibited.

A case directly in point is *Commonwealth* v. *Dana,* 2 Met. 329 (43 Mass.), decided over a century ago, and which appears never to have been questioned, concerned an indictment for unlawful possession of lottery tickets, with intent to sell them. Objection was that there was no allegation of

intent to sell in that Commonwealth. As a matter of fact, the tickets were a part of a lottery for the benefit of schools in Rhode Island and authorized by its legislature, and a copy of the act was introduced in evidence.

In the indictments under consideration, there is allegation that the acts charged were "in violation of the laws of the State of Maine." In the Massachusetts case, the statute prohibited the sale of tickets "not authorized by law."

The Court in the above cited case said:

> "The laws of Rhode Island, or any other State, have no force in this Commonwealth . . . . The dedefendant is charged with an offense committed in this Commonwealth, in violation of the Rev. Sts., c. 132, §§1, 2. And according to the construction we give to that statute, it would be no defence to prove that the tickets found in the defendant's possession, with the intent charged in the indictment, were duly issued by the authority of the State of Rhode Island."

See also the supplemental opinion by Shaw, C. J. in the same case, but arising from a subsequent motion in arrest of judgment. In this opinion, the Court further elaborated as follows:

> "The objection to the first and several other counts in the indictment is, that although it alleges, that the defendant at Boston, &c. unlawfully had lottery tickets in his possession, with an intent to sell the same, it does not allege an intent to sell the same within this Commonwealth; and the question is, whether such an averment is necessary . . . .
>
> "Here the indictment charges an unlawful possession of the lottery tickets, with the averment of an

intent to sell generally, including of course, as well this Commonwealth, as all other places. It is, in this respect, general and unlimited."

The Court then proceeds to point out if the act intended to be done is not criminal in itself, but only made so by statute, then if it should appear that the overt acts were to be carried out in a state where lawful, it would then become a question of whether the proof supported the indictment.

> "It appears to the court, therefore, that the question is rather, whether the evidence is sufficient to maintain the indictment, than whether the indictment is sufficiently certain."
> ' ". . . the intent to sell generally, being averred in the indictment, in the words of the statute, it is sufficient, although it should be held, on trial, that proof of an intent to sell in another State only would not bring the case within the statute so as to warrant a conviction."

It is further to be noted that the foregoing case concerned an indictment for the substantive offense of having in possession lottery tickets, with intent to sell them. In the instant cases the indictments are for conspiracy to maintain a lottery, and that conspiracy is alleged to have been formed in Waterville in this State.

Of similar import is the opinion in *Thompson et al* v. *State,* 106 Ala., 67, 17 So., 512 at 516, which treating on conspiracies and their essential elements, says:

> "The combination and agreement are of the essence, the gist of the offense; and as a distinct, sub-

> stantive offense, it is then committed. The place at which it is intended to commit the felony is not material. It is the law of the place where the conspiracy is formed which is broken."

In 31 Ann. Cas. (1914 A), p. 632, is an annotation following the case of *Hyde* v. *United States,* 225 U. S., 347, 32 S. Ct., 793, 56 L. Ed., 1114, Ann. Cas. 1914 A., 614, in which many cases are collected which give emphasis to the rule that as the gravamen of criminal conspiracy is the unlawful confederation, a prosecution may be had where the conspiracy is formed, though the unlawful design of the conspirators is consummated by overt acts in another jurisdiction. Included are cases from England, Canada, the United States Supreme and Federal Courts, and the courts of various states. This rule obtains whether or not an overt act must be alleged in the indictment.

The general claim was also made that the indictments offended Article VI of the Bill of Rights of the U. S. Constitution and Article I, §6 of the Constitution of Maine, both to the effect that the accused have the right to be informed of the nature and cause of the accusation. To this, if not specifically dealt with already, it may now be categorically stated that the allegations in the indictments showed the jurisdiction of the trial court and were set forth with such certainty as to enable the accused to plead convictions thereunder in bar of another prosecution for the same offense.

There is also presented for consideration a question apart from all other contentions and relating only to one indictment involving the respondent, Pooler, and one Fitch, and numbered 137 on the docket of the Court below. The word "intent" does not appear after the word fraudulent in the indictment. The phrasing is as follows:

"Feloniously did combine, conspire and agree together, with fraudulent, wrongfully and wickedly to do a certain illegal act injurious to the public morals to wit, did then and there conspire and agree together with such intent . . . ."

It is necessary under the statute to allege fraudulent or malicious intent. It was not done in this instance. In this connection, the later phrase "such intent" refers to an antecedent use of the word "intent" and means the same intent as previously mentioned. Words & Phrases, Permanent Ed., under definitions of the word "such." When, however, there is no antecedent, it cannot under the rules of criminal pleading be supplied by intendment, construction, implication or argument. The charge must be laid positively, and not informally or by way of recital merely. *State* v. *Paul*, 65 Me., 215; *State* v. *Peterson*, 136 Me., 165, 4 A., 2d. 835.

The docket entries in the particular case show that the case was closed as to the other respondent, who filed no demurrer, and as to Pooler; was placed on file without sentence. In the case Law Docket No. 610, Superior Court Docket No. 137, exceptions are sustained and the indictment adjudged insufficient.

In all other cases the enteries will be

*Exceptions overruled.*
*Indictments adjudged sufficient.*