375 A.2d 938.

STATE *vs.* HENRY LAPLUME.

JULY 22, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

Bevilacqua, C. J. The defendant, Henry LaPlume, was indicted by a grand jury on December 10, 1973. The indictment charged that he "* * * did unlawfully contrive, confederate and conspire * * * to commit a criminal and unlawful act, to wit, to murder Joyce May Frankio, in violation of §11-1-1 G.L. R.I., 1956, as amended." The case was tried before a justice of the Superior Court sitting with a jury which returned a verdict of guilty against the defendant. His motion for a new trial was denied and he is now before us on appeal.

In June 1972, Henry LaPlume and his wife, Joyce, were divorced. During their marriage they had one child who after the divorce remained in the custody of his mother. Testimony contained in the record indicates that is was an acrimonious separation, and that much of the antagonism concerned defendant's visitation rights with his minor son.

Approximately a year later defendant held a number of meetings with one Robert Picerno. The substance of their conversations, according to Picerno's undisputed testimony, concerned defendant's personal problems with his former wife and his inability to gain custody of his son. The defendant told Picerno that he would give him $5,000 if he could have her "gotten out of the way or killed." After Picerno told defendant he had found someone who would do this defendant gave him a $2,500 retainer, a picture of his wife and her address. Thereafter, Picerno took no further action to effectuate defendant's scheme.

Sometime in September 1973, defendant met with another individual Michael Burdick. At that meeting, defendant recounted to Burdick how he had previously hired someone to murder a certain woman but that instead of doing so, the man had absconded with the money. He

then offered Burdick $1,000 if he would agree to murder this woman and an additional $4,000 after it had been done. Burdick accepted and defendant gave him a slip of paper with the woman's name on it, Joyce Frankio, her address, identifying physical characteristics, and a description of the house in which she was living. The next day defendant gave Burdick $1,000.

Subsequently, Burdick contacted Robert Miller and Robert Cullotta and offered them a sum of money to help him murder Mrs. Frankio. Miller and Cullotta agreed. The three men and another man, Burdick's cousin, then drove to Mrs. Frankio's residence in East Bridgewater, Massachusetts. After one aborted attempt to perpetrate the crime, Miller and Cullotta again secured entrance into Mrs. Frankio's home on the pretense that they were having car trouble and needed to use her telephone. While Miller was using the telephone, Cullotta, who had concealed on his person a .45 caliber pistol, went in and took a pillow from the bedroom. He then returned to where Mrs. Frankio was standing in the kitchen and, placing the pillow over the gun, fired a single shot which struck her in the stomach. Thinking Mrs. Frankio had been killed, the two men left the house and were picked up by Burdick and his cousin who had been waiting for them outside.

The defendant raises a number of issues concerning, with one exception, certain rulings made by the trial justice during the course of the trial. We find that defendant's arguments are without merit and, accordingly, the verdict must be affirmed.

The defendant has briefed and argued his appeal under five main points. We shall treat the appeal in like manner. His first specification of error is that the trial justice improperly allowed Picerno to testify about the conversations he had with defendant. In support of his argument that this testimony was inadmissible, defendant relies on

the proposition that the declarations or acts of one conspirator made prior to the formation of the conspiracy are not admissible against other members of the alleged conspiracy. While defendant has accurately stated the law relating to this principle, the state has correctly identified the fallacies inherent in its application to the facts in this case. Picerno was not an indicted conspirator. Further, Picerno did not testify to acts or declarations of one of defendant's coconspirators, which would tend to show defendant's involvement in the conspiracy. On the contrary, Picerno testified to acts and declarations of defendant himself which were used solely against defendant at his own trial. Under these circumstances the trial justice was correct in ruling that Picerno's testimony was admissible to establish defendant's criminal intent as to the offense in question. *State* v. *Mastracchio,* 112 R.I. 487, 312 A.2d 190 (1973); *State* v. *Mazzarella,* 103 R.I. 253, 236 A.2d 446 (1967); *State* v. *Peters,* 86 R.I. 447, 136 A.2d 620 (1957); *State* v. *Colangelo,* 55 R.I. 170, 179 A. 147 (1935).

The defendant next contends that he could not be properly indicted under G.L. 1956 (1969 Reenactment) §11-1-1,[1] because the conspiracy, although entered into within the jurisdiction of this state, had as its unlawful object the commission of a crime in another state. In essence, defendant's argument is that since the State of Rhode Island was without jurisdiction to try defendant and his coconspirators for the substantive offense, it cannot indict and try defendant for conspiracy to commit that offense. This argument misconceives the nature of the common law crime of conspiracy.

---

[1]General Laws 1956 (1969 Reenactment) §11-1-1 provides in pertinent part as follows:

"Common law offenses not covered by statute. — Every act and omission which is an offense at common law, and for which no punishment is prescribed by this title, may be prosecuted and punished as an offense at common law."

The common law crime of conspiracy involves a combination of two or more persons to commit some unlawful act or do some lawful act for an unlawful purpose. *E.g., State v. Giorgi,* 115 R.I. 1, 339 A.2d 268 (1975). The gravamen of the crime is entry into an unlawful agreement and once that occurs the offense is complete. Rhode Island continues to adhere to the common law definition of this crime and, unlike other jurisdictions, it does not require that any overt acts have been committed in execution of the unlawful agreement. *State v. Giorgi, supra; State v. Gilman,* 110 R.I. 207, 291 A.2d 425 (1972); *State v. Edwards,* 89 R.I. 378, 153 A.2d 153 (1959); *State v. Bacon,* 27 R.I. 252, 61 A. 653 (1905).

Recognizing that the crime of conspiracy is separate and distinct from the substantive offense, it follows that it is immaterial where the subsequent acts in furtherance of the illegal design took place. *United States v. Elliott,* 266 F. Supp. 318, 323 (S.D. N.Y. 1967); *State v. Pooler,* 141 Me. 274, 43 A.2d 353 (1945). Thus the state has the power to prosecute conspirators for an agreement made within its borders even though the substantive offense is effected outside its jurisdiction.[2] In the instant case the evidence clearly establishes the fact that defendant entered into an unlawful agreement within the State of Rhode Island. Accordingly, the state has the power to prosecute him for that offense.

The defendant purportedly finds additional support for the contention that §11-1-1 is inapplicable to the instant case by the fact that in 1975 the Legislature enacted P.L. 1975, ch. 283, §2 (now §11-1-7). That section provides a

[2]While some courts have held that the crime of conspiracy cannot be interpreted to apply to a conspiracy to do an act in another jurisdiction, *see e.g., People v. Buffum,* 40 Cal.2d 709, 256 P.2d 317 (1953), this interpretation is based on the fact that the commisison of an overt act in addition to the making of the agreement is required to complete the crime of conspiracy.

punishment for entering into a conspiracy in Rhode Island to engage in conduct in another state punishable under the laws of that state.[3] The defendant argues that the enactment of this section establishes that the Legislature had never intended that the crime now covered by §11-1-7 be an indictable offense under §11-1-1.

However, before the passage of P.L. 1975, ch. 283, §2, an indictment for common law conspiracy could be obtained only pursuant to the statutory authority set forth in §11-1-1. Since this section makes every act which is an offense at common law punishable in Rhode Island, the Legislature intended to preserve and not impair or abrogate the common law. Therefore, the common law rule that criminal conspiracy is completed when the unlawful agreement is formed, regardless of where any overt act has been committed in execution thereof, is controlling when an indictment for conspiracy is brought pursuant to §11-1-1.

The defendant's third contention is that the trial justice erred by refusing to admit in its entirety a tape recording of statements made to the Rhode Island State Police by Robert Miller, a witness for the state and one of defendant's coconspirators. The statements were inconsistent in part with Miller's courtroom testimony and, under cross-examination by defense counsel, Miller admitted that he had lied to the state police and had withheld certain facts

[3]General Laws 1956 (1969 Reenactment) §11-1-7 reads as follows:
"Every person who shall, within this state, conspire with another to engage in conduct in another state punishable under the laws of that state, which conduct would also be punishable under the laws of this state, shall be subject to the same fine and imprisonment as under the law of this state pertain to the offense which such person shall have conspired to commit, provided that imprisonment for such conspiracy shall not exceed ten (10) years."

from them about the case.[4] While denying defendant's request to admit the entire tape recording, the trial justice ruled that he would permit defense counsel to read to the jury "specific questions and answers from the tape which in fact are prior inconsistent statements" and which the witness did not admit making. The defendant posits that *State* v. *Fales*, 114 R.I. 519, 335 A.2d 920 (1975), required that the trial justice admit both the tape recording of Miller's earlier statement and a transcript thereof into evidence as a prior inconsistent statement.

Generally, the credibility of a witness may be impeached by showing that on a prior occasion he made a statement inconsistent with his trial testimony. *State* v. *Vaccaro*, 111 R.I. 59, 298 A.2d 788 (1973); *Morgan* v. *Washington Trust Co.* 105 R.I. 13, 249 A.2d 48 (1969); *State* v. *Brown*, 96 R.I. 236, 190 A.2d 725 (1963). But as the trial justice properly recognized, if a witness on cross-examination unreservedly admits that the prior inconsistent statements had been made, he may decline to receive further evidence on the matter. *United States* v. *Stanfield*, 521 F.2d 1122, 1127 (9th Cir. 1975); *United States* v. *Eaton*, 485 F.2d 102, 105 (10th Cir. 1973); *Wieszeck* v. *Sepessy*, 116 N.H. 160,  , 355 A.2d 865, 866 (1976). By admitting the prior inconsistent statements the witness, in effect, performs the act of impeachment upon himself, thus eliminating the necessity of introducing the prior statements. Accordingly, with respect to those portions of the tape recording and the corresponding sections of the transcript of that recording which Miller admitted were inconsistent with his trial

---

[4]During cross-examination, the witness was not confronted with a written transcript of the statements which defense counsel attempted to show were inconsistent with his testimony. He responded, nevertheless, apparently on the basis of his recollection of the meeting with the state police. The defendant attempted to introduce the tape recording of the statements at the conclusion of the state's case and immediately prior to calling his first witness.

680

testimony, the trial justice did not err in refusing to admit this into evidence. *See State* v. *Prokopiou,* 8 Utah 2d 259, 332 P.2d 980 (1958); *Morgan* v. *Luna,* 337 S.W.2d 139 (Tex. Civ. App. 1960).

Concerning those portions of Miller's recorded statements which he did not admit making but which were inconsistent with his in-court testimony, the trial justice, as we have already noted, gave defendant the opportunity to have these prior inconsistent statements read to the jury. The defendant, however, did not deem to take advantage of this ruling and now argues that the trial justice abused his discretion in this respect. We disagree.

Although the state argues that defendant failed to lay a foundation adequate to justify introduction of the inconsistent statements and with respect to *State* v. *Fales, supra,* that the case is distinguishable on its facts, because of the view we take of this aspect of defendant's appeal we need not determine the merits of the state's position. Even assuming arguendo that a proper foundation was laid or that *Fales* is decisive,[5] the trial justice committed no error in excluding the tape recording.

Doubtless, the primary purpose of defendant's attempt to have the recordings introduced into evidence was to

---

[5] While in our opinion the applicability of *State* v. *Fales,* 114 R.I. 519, 335 A.2d 920 (1975) to the instant case need not be determined, we note in passing that in *Fales* the affidavit containing the impeaching testimony was procured 4 days before trial. It was reasonable then to hold that the witness could be expected to have had full knowledge of the nature of the statement and the circumstanecs under which it was made. Thus the rule requiring the laying of a foundation during cross-examination would not serve to save the witness from surprise and confusion and, accordingly, need not be applied.

In the instant case, however, Miller gave the prior recorded statements late at night approximately 1½ years before trial. Under these circumstances it is unlikely he had the requisite knowledge to bring this case within the exception to the rule requiring the formal laying of a foundation.

impeach the credibility of the state's witness, Miller. We fail to see, however, how defendant has been prejudiced by the trial justice's ruling inasmuch as defendant could have done this effectively by having defense counsel read the pertinent contradictory statements to the jury.

The defendant's fourth specification of error is that the trial justice abused his discretion in refusing to allow defense counsel to postpone cross-examination of a prosecution witness to a later time during the presentation of defendant's case. The defendant had been given the right to cross-examine the witness at the completion of her direct testimony but defense counsel stated that he had no questions to ask her at that time and requested that the witness remain available. The trial justice responded, however, that if defense counsel desired to cross-examine the witness he must do so when she was presently available. Later, during the presentation of defendant's case, defense counsel called the witness for the purpose of cross-examining her but the trial justice ruled that in the interest of trying the case in an orderly fashion, he would prevent him from doing so.

This contention requires little discussion, for it is well-settled under our practice that the determination of the order of proof is within the sound discretion of the trial justice. *Vigneau* v. *LaSalle*, 111 R.I. 179, 182, 300 A.2d 477, 479 (1973); *see Pucci* v. *Algiere*, 106 R.I. 411, 428, 261 A.2d 1, 11 (1970). This discretion encompasses the right to control the examination of witnesses, including whether a party may recall a witness for further cross-examination. Such discretionary power will not be disturbed unless it clearly appears that it has been improperly exercised or that there has been an abuse thereof. *State* v. *Spivey*, 113 R.I. 1, 316 A.2d 498 (1974); *Vingi* v. *Trillo*, 77 R.I. 55, 73 A.2d 43 (1950).

It is apparent that in denying defendant's request, the

trial justice was concerned that the trial move forward in an orderly and expeditious fashion. The defendant was not precluded from cross-examining the witness at the appropriate and usual time, after her direct testimony, or from recalling her as his own witness. In effect, defendant was afforded the opportunity to challenge and probe the testimony of this witness. Thus, the instant record does not, in our opinion, disclose an abuse of discretion.

The defendant's final contention is that the trial justice erred in ruling that Alice Burdick, Michael Burdick's wife, need not testify about certain communications which were made during their marriage.[9] After defense counsel called Mrs. Burdick she indicated, in response to questioning by the trial justice, that she did not want to testify as a witness. On this basis the trial justice concluded that Mrs. Burdick was not voluntarily offering herself as a witness within the provisions of §12-17-10 and, thus, was excused from testifying.

Section 12-17-10 provides that "[t]he husband or wife of any respondent in a criminal prosecution, offering himself or herself as a witness, shall not be excluded from testifying therein because he or she is the husband or wife of such respondent." The defendant intimates that under this section if a wife initiates divorce proceedings the common law privilege not to testify against one's spouse as modified by this section no longer exists. The defendant, however, advances no argument nor cites any authority in support of this proposition.

It is clear that in enacting this statute the Legislature intended to abrogate the common law rule which prevailed in civil as well as in criminal cases that, generally,

---

[9]The defendant made an offer of proof in which counsel stated that had he been permitted to question Mrs. Burdick, she would have testified that she had commensed divorce proceedings against Mr. Burdick and had no intention of returning to reside and live with him.

a spouse could be precluded from testifying against the other spouse who was a party to the action. 8 Wigmore, *Evidence* §2227 (McNaughton rev. ed. 1961). Accordingly, the statute will be strictly construed so as not to extend liberally the exception to the common law rule which the Legislature has carved out. *Atlantic Ref. Co.* v. *Director of Pub. Works*, 104 R.I. 436, 244 A.2d 853 (1968); *accord, Hodge* v. *Osteopathic Gen. Hosp.*, 107 R.I. 135, 265 A.2d 733 (1970). Furthermore, in the absence of equivocal or ambiguous language the words of a statute cannot be interpreted or extended but must be applied literally. *Podborski* v. *William H. Haskell Mfg. Co.*, 109 R.I. 1, 279 A.2d 914 (1971); *United Transit Co.* v. *Hawksley*, 86 R.I. 53, 133 A.2d 132 (1957).

The language of §12-17-10 is plain, explicit and free from ambiguity. There is nothing contained therein which would indicate that a spouse who had not voluntarily offered herself as a witness but had initiated a divorce proceeding was not within the intended scope of the statute. Accordingly, the rule of the trial justice must be upheld.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

*Julius C. Michaelson,* Attorney General, *Gregory L. Benik,* Special Asst. Attorney General, for plaintiff.

*John D. Lynch,* for defendant.