## STATE

v.

## Samuel A. DONATO.

### No. 78–105–C.A.

Supreme Court of Rhode Island.

May 13, 1980.

Dennis J. Roberts, II, Atty. Gen., Alfred French Goldstein, Sp. Asst. Atty. Gen., for plaintiff.

Joseph A. Capineri, Pawtucket, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, Samuel A. Donato, was indicted by a grand jury on November 16, 1973, along with his wife, Valerie Ann Donato, and Joseph R. Argencourt and William L. Marrapese. The indictment charged that between May 5, 1973, and October 21, 1973, they "did unlawfully conspire, confederate and agree together, and with one James Meunier, a co-conspirator but not a defendant, in violation of § 11–1–1, G.L.R.I.1956, as amended, with the felonious intent to cheat and defraud * * * an insurance company, in violation of § 11–41–3 and § 11–41–5, G.L.R.I., 1956, as amended * * *."

The state consolidated the trial of defendant, Valerie Ann Donato, and Joseph Ar-

gencourt with the trial of Andrew A. Bucci and N. Charles Simon, who were indicted on April 30, 1976, for a separate conspiracy to defraud another insurance company in violation of G.L.1956 (1969 Reenactment) § 11–1–1, as amended by P.L.1975, ch. 283, § 1, but who were alleged participants in the same grand scheme. The five defendants were tried together before a jury in the Superior Court of Providence County beginning on November 29, 1976. William Marrapese did not stand trial with his codefendants; he did, however, testify as a witness for the state.

James Meunier, a Central Falls police officer, testified that on May 5, 1973, he entered Tres Chic Coiffures, a beauty salon in Pawtucket, to pick up his girl friend, who was having her hair done. The owner of the salon, defendant Donato, apparently aware that Meunier, a long-time acquaintance, was having some financial difficulties, asked Meunier if he would like to make some money. Meunier casually responded that he was always interested in making money but that he knew nothing about the beauty salon business. Donato replied that he was thinking more along the lines of insurance fraud and explained to Meunier that by staging a phony automobile accident and collecting on the insurance policies, they could both make a considerable amount of money.

On May 8, Meunier spoke to Detective Robert M. Squillante of the Rhode Island State Police and informed him of the conversation with defendant. Detective Squillante advised Meunier to wait until Donato contacted him again and then to report back. When the two met again on May 14, they prepared to have Meunier meet Donato's superior in the operation. The defendant later informed Meunier that the third party did not trust Meunier completely, and Donato therefore prepared to meet Meunier alone. Before this meeting, on May 23 at Stanley's Restaurant in Central Falls, Meunier had been wired with a transmitting body microphone. State police officers observed the two old friends and recorded the conversation by means of a transceiver. The defendant explained that Meunier would receive money to purchase insurance, that shortly he would be involved in a staged accident, and that sometime later he would be set up as the victim in a second accident. Meunier also testified that on the evening of May 23 defendant came to Meunier's apartment, gave him $150, and directed Meunier to go to the Blais Insurance Agency to purchase a policy for his automobile. Meunier was told that he would receive money for further premium payments as they came due. In June 1973, Meunier bought a policy on his 1971 Dodge Dart, later transferring the policy when he bought a 1973 Plymouth Fury in July.

William Marrapese testified for the state that Joseph Argencourt, attorney Andrew Bucci, and Marrapese himself were in Bucci's Providence law office together in early October 1973. Bucci was quite displeased that he was having recurrent mechanical problems with his Jaguar XK–12. Marrapese, at that time a client of Bucci, recommended that Bucci have the Jaguar "totaled out" in a staged accident. Argencourt said that he knew someone who could arrange it. A day or two later, Charles Simon met with the other three gentlemen in Bucci's office. Simon said that he had bought an insurance policy for a couple and that they were "primed and ready to go forward." In the accident being planned, Bucci's Jaguar would be "totaled," the couple would file a claim for bodily injury, and Simon would take a portion from the proceeds of the claim. The four met once again on October 18 or 19 to discuss arrangements for the accident to be staged on the evening of Sunday, October 21.

Meanwhile, once again according to Meunier's testimony, on Saturday, October 20, defendant Donato called Meunier to arrange a meeting to prepare for an accident in which Meunier would participate. They met Sunday morning and again on Sunday afternoon. On Sunday evening, defendant and his wife, Valerie, drove to Meunier's apartment, and after some detours and last-minute planning, Meunier, joined by an undercover police officer, followed the Donato car to the Kirkbrae Country Club in Lin-

coln. Meunier's car had been equipped with a radio transmitter and its left taillight had been broken so that state police officers could keep its movements under surveillance. Marrapese drove Bucci's Jaguar to the spot selected by Simon and Argencourt for the staging of the accident. The Meunier and the Donato cars followed. As all three cars and their drivers were on the scene poised to act out their parts, the state police interrupted and placed the Donatos, Marrapese, and Argencourt under arrest.

The defendant, Valerie Donato, Marrapese, and Argencourt each pleaded not guilty to the charge in indictment No. 73–1815. Bucci and Simon also pleaded not guilty to the charge in indictment No. 76–602.[1] The jury found defendant guilty but could not agree on verdicts with regard to Valerie Donato, Argencourt, Simon, and Bucci. After determining that further jury deliberations would be unavailing, the trial justice declared a mistrial in the case of each of Donato's codefendants. Both of defendant's posttrial motions challenging the validity of the verdict against him were denied. The trial justice sentenced defendant to serve one year in the Adult Correctional Institutions but suspended the sentence and placed defendant on probation for five years. A judgment of conviction was entered. It is from that judgment that defendant now appeals.

With respect to the denial of his posttrial motions defendant contends on appeal that the jury's verdict was not consistent with the law of conspiracy because he alone stood convicted of the conspiracy charge, and that consequently, the court lacked jurisdiction to enter judgment on the invalid verdict. We believe that defendant's motions were properly denied.

It is true that the common-law crime of conspiracy involves a combination of two or more persons to commit some unlawful act or do some unlawful act for an unlawful purpose. *State v. LaPlume*, 118 R.I. 670, 677, 375 A.2d 938, 941 (1977); *State v. Giorgi*, 115 R.I. 1, 4, 339 A.2d 268, 270 (1975). It is also true in Rhode Island that "one defendant in a prosecution for conspiracy cannot be convicted when all of his alleged coconspirators, be they one or more, have been acquitted or been discharged under circumstances which amount to an acquittal." *State v. Fontaine*, 113 R.I. 557, 558–59, 323 A.2d 571, 572 (1974); *State v. McElroy*, 71 R.I. 379, 392–93, 46 A.2d 397, 403 (1946). As a result of the trial in the instant case, however, not all of defendant's alleged coconspirators were acquitted or discharged under circumstances amounting to an acquittal. One codefendant, William Marrapese, had not yet been tried, nor, according to testimony elicited by the state's attorney, had he been granted immunity or promised that the state would dismiss the charge against him in return for his testimony. He was therefore still subject to prosecution.[2] As for the other two codefendants, Valerie Donato and Joseph Argencourt, the jury was unable to agree on a verdict. The discharge of a jury in disagreement and the resulting declaration of a mistrial by the trial justice, if due to "manifest necessity," neither constitute circumstances amounting to an acquittal, see *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717, 730 (1978);

---

1. Andrew Bucci and Charles Simon were indicted together on April 30, 1976. The basis for the indictment was information supplied to state authorities by William Marrapese, who in 1975 was serving a life sentence in a federal penitentiary in Connecticut upon convictions for three federal offenses. Sometime after Marrapese had spoken with Rhode Island State Police officers, his life sentence was reduced to three concurrent sentences of six years, five years, and six years.

2. Some courts have even held that a grant of immunity does not amount to an acquittal, and

therefore, the conviction of a single coconspirator will stand even though his coconspirators have secured immunity from prosecution. *See, e. g., People v. Gilbert*, 26 Cal.App.2d 1, 78 P.2d 770 (1938); *People v. Bryant*, 409 Ill. 467, 100 N.E.2d 598 (1951); *Hurwitz v. State*, 200 Md. 578, 92 A.2d 575 (1952). Because Marrapese did not secure formal immunity, however, we do not decide whether immunity is a disposition amounting to an acquittal under the rule of *State v. McElroy*, 71 R.I. 379, 392–93, 46 A.2d 397, 403 (1946).

*United States v. Sanford*, 429 U.S. 14, 15–16, 97 S.Ct. 20, 21, 50 L.Ed.2d 17, 19–20 (1976), (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 165 (1824)); *Durham v. Wyrick*, 545 F.2d 41, 43 (8th Cir. 1976); 3 Wharton's *Criminal Procedure* § 519, at 428 (12th ed. 1975), nor bar the state from reprosecuting the discharged codefendants for the offense charged in the original indictment.[3] *See Arizona v. Washington*, 434 U.S. at 509, 98 S.Ct. at 832, 54 L.Ed.2d at 730.

■ The defendant also contends on appeal that the trial justice, by clarifying for the jury an alleged mis-citation within the indictment, improperly amended the grand jury indictment without defendant's consent. *See State v. Davis*, 39 R.I. 276, 289–90, 97 A. 818, 823, *reh. denied*, 98 A. 57 (1916).

The indictment returned by the grand jury charged that Donato and his codefendants "did unlawfully conspire, confederate and agree together * * * in violation of § 11–1–1 * * * with the felonious intent to cheat and defraud General Acci-

dent Group, an insurance company, in violation of § 11–41–3 and § 11–41–5 * * *." It is clear from the record that the state interpreted the indictment to charge, and prepared its case and evidence to prove, a conspiracy to cheat and defraud insurance companies by purchasing automobile policies, staging fraudulent accidents, and then filing spurious personal-injury claims on the policies. Defrauding insurance companies is a crime prohibited by G.L.1956 (1969 Reenactment) § 11–41–4.[4] The statute cited in the indictment, G.L.1956 (1969 Reenactment) § 11–41–3, however, prohibits embezzlement and fraudulent conversion.[5] Within the indictment, therefore, lies a discrepancy between the written statement describing the crime charged and the citation of the statute allegedly violated.

Prior to the impaneling of the jury, Argencourt's attorney raised the question of the citation in the indictment of the embezzlement statute. The trial justice ruled, and made it the law of the case, that the mis-citation was an immaterial mistake. *See* G.L.1956 (1969 Reenactment) § 12–12–10, as amended by P.L.1974, ch. 118, § 11.[6]

---

**3.** The issue before us is whether the trial justice properly denied defendant's posttrial motions challenging the verdict. The record indicates that the charges against Valerie Donato, Joseph Argencourt, and William Marrapese were all dismissed in 1979 upon the motion of the state pursuant to Super.R.Crim.P. 48(a). Whether these subsequent dismissals constituted discharges under circumstances amounting to an acquittal and, if so, whether defendant's conviction should be overturned, are issues that were not before the court on this appeal.

**4.** General Laws 1956 (1969 Reenactment) § 11–41–4 provides in pertinent part:

"Every person who shall obtain from another designedly, by any false pretense or pretenses, any money, goods, wares, or other property, with intent to cheat or defraud * * shall be deemed guilty of larceny."

**5.** General Laws 1956 (1969 Reenactment) § 11–41–3 provides:

"Embezzlement and fraudulent conversion. —Every officer, agent, clerk, servant or other person to whom any money or other property shall be entrusted for any specific purpose, and every person acting as executor, administrator, conservator, guardian, receiver, assignee, custodian, or trustee appointed by order, decree, or judgment of court, or by deed, will or other instrument in writing, who

shall embezzle or fraudulently convert to his own use, or who shall take or secrete, with intent to embezzle or fraudulently convert, to his own use, any money or other property which shall have come into his possession or shall be under his care or charge by virtue of such employment or for such specific purpose or by virtue of his acting as such executor, administrator, guardian, conservator, receiver, assignee, custodian or trustee, and every person who shall collect or receive money or property from another for a commission to be retained out of said money or other property so collected or received, and who shall fraudulently retain out of said money or property so collected or received more than the amount of said commission, and shall embezzle or fraudulently convert the same to his own use, or shall take or secrete the same with intent to embezzle or fraudulently to convert the same to his own use, shall be deemed guilty of larceny."

**6.** General Laws 1956 (1969 Reenactment) § 12–12–10, as amended by P.L.1974, ch. 118, § 11, reads:

"Variances of proof and immaterial mistakes.—A defendant shall not be acquitted or discharged on the ground of variance between the allegation and proof if the essential

Argencourt's attorney, however, contended that the citation was not a mistake and requested the trial justice's permission to read the embezzlement statute, § 11–41–3, to the jury. After the statute was read, the state's attorney requested the trial justice to instruct the jury that the state was attempting to prove a conspiracy to cheat and defraud under § 11–41–4, rather than a conspiracy to embezzle under § 11–41–3. The trial justice initially denied the request for such an instruction, reiterating his position that the citation of § 11–41–3 was an immaterial mistake. He also stated that such a mis-citation would not be an appropriate ground for dismissing the indictment. Subsequently, however, the trial justice decided to clarify the discrepancy between the statement of the crime charged and the statutory citation by reading pertinent parts of § 11–41–4 to the jury. Defense counsel objected and moved to have the case passed and the judge disqualified. Both motions were denied.

The defendant's contentions are two: (1) the trial justice's clarification constituted an improper amendment of the indictment, and (2) the discrepancy between the crime charged and the citation clouded the indictment to such an extent that defendant was deprived of his right "to be informed of the nature and cause of the accusation." R.I. Const. art. I, § 10. We believe that both contentions lack merit.

The issues before us must be resolved by reconciling two separate sections of Super. R.Crim.P. 7. In support of his contention that the amendment was improper, defendant relies on Rule 7(e) which states:

"At any time prior to verdict or finding, the court may with the consent of the defendant permit the indictment to be amended to correct an *error in form* or the description of the offense intended to be charged or to charge a lesser included offense." Super.R.Crim.P. 7(e) (emphasis added).

At the same time, Rule 7(c) makes reference to the problem before us:

"Error in the [statutory] citation or its omission shall not be grounds for dismissal of the indictment * * * or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice." Super.R.Crim.P. 7(c).

■ In cases similar to the one before us, courts have permitted the amendment or judicial clarification of indictments containing erroneous statutory citations at or prior to trial because such defects are deemed to be merely formal. *See, e. g., Dendy v. State,* 224 Miss. 208, 213, 79 So.2d 827, 829 (1955); *State v. Wines,* 65 N.J.Super. 262, 268, 167 A.2d 650, 653 (1961); *Henderson v. State,* 7 N.J.Misc. 520, 522, 146 A. 335, 336 (1929); *People v. Grawunder,* 2 Misc.2d 126, 128, 151 N.Y.S.2d 137, 139 (Sup.Ct.1956). In general, we agree with this principle; our Rule 7(e), however, quite clearly requires the defendant's consent before "an error in form" may be amended. Rule 7(c), on the other hand, indicates that a nonprejudicial error in statutory citation is harmless to the extent that it will not jeopardize the state's case at any point before, during, or after a trial. An indictment will not be dismissed, nor a conviction reversed, even when the state has intentionally refused or unintentionally failed to amend the indictment to correct such an error in citation. From a practical viewpoint a nonprejudicial error in statutory citation simply does not need to be corrected by amendment, and such an error could not properly be deemed to be a Rule 7(e) "error in form." Logic would dictate then that the defendant's consent would not be required if, for whatever reason, the state or the court should choose to correct such an error by amendment. At the same time, however, an error in statutory citation which a defendant can show to be prejudicial would be deemed a

elements of the crime are correctly stated in the indictment, information or complaint, un*less he is* thereby prejudiced in his defense. He shall not be acquitted or discharged by reason of an immaterial misnomer of a third party, by reason of an immaterial mistake in

the description of the property or the ownership thereof, by reason of failure to prove unnecessary allegations in the description of the crime, or by reason of any other immaterial mistake in the indictment, information or complaint."

Rule 7(e) "error in form" and would require the defendant's consent before it could be corrected by amendment. The crucial question before us, then, is whether the error in the indictment was prejudicial [7] or nonprejudicial.

To determine whether defendant suffered any prejudice or surprise as a result of either the error in statutory citation or the trial justice's correction, we must examine the indictment. In addressing defendant's contentions, we look first to the definition of an indictment. Rule 7(c) states that "[t]he indictment * * * shall be a plain, concise and definite *written* statement of the offense charged * * * which provides the defendant and the court with adequate notice of the offense being charged * * *." Super.R.Crim.P. 7(c) (emphasis added). Although Rule 7(c) goes on to state that.the "indictment * * * shall state * * * for each count the official or customary citation of any statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated," it is clear that the indictment is the written statement. *See* 2 Wharton's *Criminal Procedure* § 224, at 3. We therefore look to the written statement to determine whether defendant was adequately notified of the crime charged as required by R.I.Const. art. I, § 10.

That defendant was charged with conspiracy is not disputed. The crime of conspiracy, still a common-law crime in Rhode Island, *State v. Giorgi*, 115 R.I. at 5, 339 A.2d at 271, was described in the indictment in proper terms and with the proper statutory citation, *viz.*, G.L.1956 (1969 Reenactment) § 11–1–1.[8] The defendant's argument presumes that he and his codefendants were not adequately apprised of the charge against them because the object of the alleged conspiracy was not described in

sufficiently clear terms. Whether the indictment was constitutionally sufficient and whether defendant suffered any prejudice are questions that turn on the adequacy of the description of the object of the conspiracy. *See State v. Smith*, 56 R.I. 168, 177, 184 A. 494, 498 (1936).

Rule 7(c) states that the written statement describing the crime charged "shall be sufficient if the offense is charged either (1) by using the name given to the offense by the common law or by statute, or (2) by stating the definition of the offense in terms of either the common law or the statute defining the offense, or in terms of substantially the same meaning." Super.R. Crim.P. 7(c). The crime prohibited by G.L. 1956 (1969 Reenactment) § 11–41–4, the statute cited for the object of the conspiracy, is entitled, "Obtaining property by false pretenses or personation." The indictment does not describe the crime by its statutory name as prescribed by Rule 7(c)(1). The indictment therefore must at least set forth the crime in terms of the statute defining the offense or in terms of substantially the same meaning. Super.R. Crim.P. 7(c)(2).

While Rule 7(c) sets out guidelines for the adequate description of a crime in an indictment, it is nevertheless settled in Rhode Island that "an indictment charging conspiracy need not set forth the object of the conspiracy with the same particularity that would be required for an indictment charging the commission of a crime which is the object of the conspiracy." *State v. Lerner*, 112 R.I. 62, 71, 308 A.2d 324, 332 (1973); *State v. Gilman*, 110 R.I. 207, 212–13, 291 A.2d 425, 429 (1972) (citing *Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927) and *Brown v. United States*, 403 F.2d 489 (5th Cir. 1968)); *State*

---

7. Were we to find the error in the statutory citation prejudicial, we would be compelled to reverse the conviction because defendant never gave his consent to the trial justice's amendment of the indictment.

8. General Laws 1956 (1969 Reenactment) § 11–1–1, as amended by P.L.1975, ch. 283, § 1, provides in pertinent part:

"Common law offenses not covered by statute.—Every act and omission which is an offense at common law, and for which no punishment is prescribed by the general laws, may be prosecuted and punished as an offense at common law."

*v. Smith*, 56 R.I. at 183, 184 A. at 501. This court has also stated "that in a conspiracy to do something unlawful, the execution thereof, or the means intended or benefit derived, need not be stated in the indictment." *State v. Smith*, 56 R.I. at 182, 184 A. at 500 (citing *State v. Bacon*, 27 R.I. 252, 257, 61 A. 653, 654–55 (1905)).

With the foregoing principles in mind, we examined that portion of the indictment which referred to the object of the conspiracy: "with the felonious intent to cheat and defraud General Accident Group, an insurance company * * *." We have also examined the relevant portion of § 11–41–4, which reads, "[e]very person who shall obtain from another designedly, by any false pretense or pretenses, any money * * * with intent to cheat or defraud * * * shall be deemed guilty of larceny." General Laws 1956 (1969 Reenactment) § 11–41–4. Although the indictment clearly states the specific intent required, it omits two elements of the substantive crime prohibited by § 11–41–4—the act itself, obtaining money, and the means, "by false pretense or pretenses." Nevertheless, in light of the principles of *State v. Lerner* and *State v. Smith*, both *supra*, we hold that the use of the phrase "with the intent to cheat and defraud" was sufficient both to satisfy the requirements of Rule 7(c)(2) and to apprise defendant that he was being charged with the crime of conspiracy to cheat and defraud an insurance company. *See State v. Bacon*, 27 R.I. at 256–59, 61 A. at 654–55. We also hold that the trial justice's correction by amendment of the error in statutory citation worked no prejudice on defendant, who had been adequately apprised of the charge against him. *See United States v. Dawson*, 516 F.2d 796, 804 (9th Cir. 1975); *United States v. Goldstein*, 502 F.2d 526, 529 (3d Cir. 1974); *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir.), *cert. denied*, 400 U.S. 849, 91 S.Ct. 39, 27 L.Ed.2d 86 (1970); *Stewart v. United States*, 395 F.2d 484, 488 (8th Cir. 1968); *People v. Grawunder*, 2 Misc.2d at 128, 151 N.Y.S.2d at 139.

The defendant's next contention is that the trial justice improperly admitted into evidence a tape recording of a conversation between James Meunier and defendant Donato. The defendant objected to the introduction of the tape on the grounds that while defendant's statements were generally audible and understandable, Meunier's questions and statements were consistently inaudible. The defendant argues that because Meunier could not be understood, Donato's statements appear to be inculpatory only because they are out of context. The defendant contends that the taped conversation, therefore, is more prejudicial than probative.

The conversation at issue took place at Donato's request on May 23, 1973, at Stanley's Restaurant. With Meunier's permission, a state police officer had strapped a small transmitting device to Meunier's waist. At the same time the conversation was taking place in one of the restaurant booths, an officer of the state police intelligence unit was observing from the lunch counter, and other officers in a vehicle outside were recording the transmitted conversation.

The state sought to play the recording for the jury as evidence corroborating Meunier's oral testimony. After the defense objected, the trial justice held an extensive voir dire over a two-day period in which the state laid a proper foundation and then played the tape. The tape recording as played initially, unamplified, was only partially audible; background noises made understanding the substance of the conversation difficult, and static interference marred the technical quality of the recording. After hearing the unamplified tape, the trial justice ruled that although the state had laid a proper foundation for the introduction of the tape, the recording was not sufficiently audible for the jury to understand. *See People v. Stephens*, 117 Cal. App.2d 653, 661, 256 P.2d 1033, 1038 (1953).

The trial justice, however, afforded the state's attorney an opportunity to enhance the audibility of the recorded conversation. With the aid of an audio amplifier, the tape

was replayed for the trial justice and counsel. After the second hearing the trial justice was satisfied that although some portions of the tape remained "difficult to understand," on the whole the quality of the recording was consistently good throughout the conversation. He also estimated that both voices were audible about 80 percent of the time. He therefore ruled that the recorded conversation, properly edited, was sufficiently audible and intelligible to be heard by the jury.

Most jurisdictions ruling on the admissibility of sound recordings of imperfect quality or partial inaudibility have held that a recording will be admissible unless the inaudible portions or omissions are so substantial as to render the recording as a whole untrustworthy. *United States v. Avila*, 443 F.2d 792, 795 (5th Cir.), *cert. denied*, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258 (1971); *State v. Dye*, 60 N.J. 518, 531, 291 A.2d 825, 831, *cert. denied*, 409 U.S. 1090, 93 S.Ct. 699, 34 L.Ed.2d 675 (1972); *see Bentley v. State*, 397 P.2d 976, 979 (Alaska 1965); *State v. Salle*, 34 Wash.2d 183, 193, 208 P.2d 872, 878 (1949). Furthermore, these courts would leave the matter of the admissibility of such recordings to the sound discretion of the trial court. *See United States v. Avila*, 443 F.2d at 795 (5th Cir.), *cert. denied*, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258 (1971).

Applying these principles to the present case, we find that the trial justice did not abuse his discretion in admitting for the jury's consideration the tape recording of the May 23 conversation. He conducted an extensive evaluation out of the presence of the jury. Twice he listened to the tape, once unamplified and once amplified. On the second listening he was able to evaluate to what extent the quality of the recording had been enhanced. His ruling, based on a thorough examination of the taped conversation, will therefore not be disturbed on appeal.

The defendant's last contention is that the trial justice improperly denied a motion to pass the case made after an allegedly prejudicial response to a question asked by defendant Simon's attorney during cross-examination of William Marrapese:

"Q. You stated that Mr. Simmons [*sic*] was to get a piece of the insurance policy that he had bought, did you not?

"A. He did on all his cases."

The impact of the response on the defendants' attorneys was not immediate. They asked to have the answer read back for clarification and then made a motion to pass the case on the grounds that the gratuitous response prejudiced the rights of Charles Simon and his codefendants. Although the trial justice concluded that the answer was not responsive and may have led to adverse inferences, he denied the motion to pass. Instead, he offered to give cautionary instructions to eliminate any prejudice that may have resulted. The defendants' attorneys, however, requested that no cautionary instructions be given. The trial justice complied with their request.

The defendant asserts that Marrapese's statement implanted into the minds of the jurors the notion that Charles Simon was "a peddler in phony claims." He also emphatically contends that in a conspiracy case any such perception of one alleged coconspirator colors the jury's perceptions of all other coconspirators. This court has said that "[w]hether a particular statement is prejudicial cannot be determined by a fixed formula. Rather, we will evaluate its probable effect upon the outcome of the case by examining the remark in its factual context * * *." *State v. Pugliese*, 117 R.I. 21, 26, 362 A.2d 124, 126–27 (1976). We would be willing to concede that the statement might have prejudiced Charles Simon, or perhaps Andrew Bucci, neither of whom, however, was ultimately convicted. But given the factual context in which the statement was made and the opacity of any possible reference to the role in Simon's "cases" played by defendant, who was being tried on a separate indictment for a separate, though related, conspiracy, we do not believe that the statement was prejudicial to defendant.

The defendant also argues on appeal that the effect of the statement was to force him to make a tactical choice between (1) remaining silent, thereby unwillingly permitting the statement to tarnish the jurors' perceptions of him and his codefendants and (2) testifying to deny the truth of the statement, thereby involuntarily waiving his privilege against self-incrimination. We believe, however, that only Charles Simon realistically faced that choice because only he could have effectively rebutted Marrapese's off-handed allegation. Furthermore, because defendant faced no threat of prejudice, his contemplated denial of the accuracy of the statement would have been unnecessary.

We do not agree that because of Marrapese's response the defendant suffered any serious prejudice. We therefore find that the trial justice's denial of the motion to pass was not improper.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.