**STATE**

v.

**Keith BURKE.**

**No. 2000–229–C.A.**

Supreme Court of Rhode Island.

Dec. 17, 2002.

Lauren Sandler Zurier, Aaron L. Weisman, Providence, for Plaintiff.

Janice M. Weisfeld, Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., and LEDERBERG, FLANDERS and GOLDBERG JJ., and SHEA, J. (Ret.).

## OPINION

SHEA, Justice (Ret.)

The defendant, Keith Burke, was convicted by a jury of one count of felony witness intimidation in violation of G.L. 1956 § 11–32–5. He was sentenced to serve a five-year term of imprisonment for intimidating his wife, Deborah Burke (Deborah), and an additional fifteen-year enhanced penalty as an habitual offender. For the reasons set forth below, we affirm the judgment of the Superior Court.

### Facts/Procedural History

In June 1996, defendant was arrested and charged with assault and battery and malicious damage after assaulting Deborah in front of their seven-year-old daughter and smashing a glass vase on the floor. He recently had been released from prison for unrelated convictions and was then on probation. Consequently, in addition to the assault charges, the state notified the defendant that it would seek to have the Superior Court declare him to be a probation violator. A probation violation hearing was scheduled for September 6, 1996. Also scheduled that day was defense counsel's motion to withdraw. The motion was denied and the probation violation hearing was to commence after a recess.[1]

During the recess, Deborah and the defendant went outside to smoke. While they were outside, a disinterested witness, Kathleen O'Brien, overheard defendant yelling in Deborah's face "that if the state didn't have any witnesses that they couldn't go forward with the case" and that if "you don't drop the charges I am going to beat the f * * * out of you and they will

---

1. The defendant subsequently was declared to be a violator.

find you half dead." Ms. O'Brien immediately reported to the authorities what she had overheard and she identified defendant as the person who had made the threats.

Thereafter, on September 24, 1996, defendant was charged by criminal complaint with felony witness intimidation in violation of § 11–32–5(b)[2] and was arraigned in the District Court. A criminal information later was filed in the Superior Court. The day after defendant was arraigned, the state filed notice that it would seek the imposition of an additional sentence for defendant as an habitual offender, pursuant to G.L.1956 § 12–19–21, as amended by P.L.1988, ch. 402 § 1. As grounds therefore, the state cited two previous convictions that defendant had received. The first was for breaking and entering a dwelling without consent. The second, was for committing larceny over the value of $500.

The case then languished for almost two and one-half years, during which time defendant was represented by a succession of attorneys: an assistant public defender, an appointed counsel and a private counsel. The private counsel entered her appearance on February 15, 1999.[3] On May 24, 1999, the day before the trial was scheduled to begin, several pretrial motions were filed by the parties. The rulings on those motions form the basis of this appeal.

At the conclusion of the jury trial, defendant was found guilty. The trial justice sentenced him to serve a five-year term of imprisonment on the underlying charge of witness intimidation, coupled with a fif-teen-year term of imprisonment as an habitual offender.

Additional facts that are pertinent to this appeal will be provided as needed.

## A. The Motion to Withdraw

██ The day before the trial was to commence, defendant's private counsel made an oral motion to withdraw from the case, citing that she and defendant had differences of opinion concerning trial strategy. She said that she had refused to file various motions defendant had requested because, in her opinion, they had no legal merit. Also, defendant had refused to accept her plea recommendations because he believed that they were not favorable enough for him. Based upon these differences, defense counsel maintained that her representation of defendant was not in his best interest because he no longer felt "comfortable" with her actions.

After ascertaining that defense counsel still was prepared to represent defendant at trial, the trial justice denied the motion. The defendant then asserted that defense counsel had a conflict of interest because she had been romantically involved with his wife's former divorce attorney. In addition, he asserted that there was a breakdown in communication between them because she was not following his instructions and that she had not discussed the case with him. After detailed discussion on the record, the trial justice rejected defendant's arguments and advised defendant that although he was free to fire his attorney, the court would neither discharge her from the case nor permit any delay of the trial. He

---

**2.** At the time that defendant was charged, the applicable section was designated as § 12–19–21(B). It has since been redesignated to (b). For the sake of clarity, we shall refer to the statute's sections as (a) and (b) in this opinion.

**3.** The record is silent about why the previous two attorneys withdrew from the case.

warned defendant that "[t]he risk is that the trial goes on." The defendant expressly rejected the idea of proceeding *pro se*. The defendant maintains that by denying the motion to withdraw, the trial justice violated his sixth amendment right to counsel.

Although defendant made neither a motion to substitute counsel nor a motion for a continuance, we will consider the case as if such motions had been made because it is clear from the trial justice's ruling that such motions would have been denied.

■■■ "[A]n accused's right to select his or her own attorney to defend against criminal charges has a central role in our adversary system of justice." *State v. Moran*, 699 A.2d 20, 25 (R.I.1997). Although that right "is not absolute, it does command a presumption in favor of its being honored." *Id.* "A trial justice's decision on a motion for a continuance will not be disturbed on appeal absent an abuse of discretion." *State v. Calenda*, 787 A.2d 1195, 1201 (R.I.2002) (per curiam). "A sustainable exercise of discretion in this context requires the trial justice to balance carefully the presumption in favor of the defendant's right to trial counsel of choice and the public's interest in the prompt, effective, and efficient administration of justice." *Moran*, 699 A.2d at 25. "Given these countervailing considerations, it follows * * * that each case must turn on its own circumstances." *Id.*

"Some of the factors to be weighed in the balance include the promptness of the continuance motion and the length of time requested; the age and intricacy of the case; the inconvenience to the parties, witnesses, jurors, counsel, and the court; whether the request appears to be legitimate or merely contrived foot dragging; whether the defendant contributed to the circumstances giving rise to the request; whether the defendant in fact has other competent and prepared trial counsel ready to pinch-hit; whether there are multiple codefendants, making calendar control more difficult than usual; and any other relevant factor made manifest by the record." *Id.* at 26 (citing *United States v. Mendoza–Salgado*, 964 F.2d 993, 1015 (10th Cir.1992)).

Thus, "in order to work a delay by a last minute discharge of counsel, there must exist exceptional circumstances[.]" *State v. Monteiro*, 108 R.I. 569, 575, 277 A.2d 739, 742 (1971) (citing *United States v. Grow*, 394 F.2d 182, 209 (4th Cir.1968)).

In the case before us, no such exceptional circumstances were shown. The record reveals that defense counsel entered her appearance on February 15, 1999, and that the motion to withdraw was filed on May 24, 1999, the day before the trial.[4] She was defendant's third attorney in this matter. The purported reason for the motion was that defense counsel and defendant disagreed over her trial strategy. That disagreement concerned only "certain matters that we had discussed and certain motions that he requested that I file that I did not agree with and told him under the law I would not file those." Defense counsel informed the court that she had been an attorney for seven years, previously had represented accused felons before a jury, had taken all of the appropriate legal steps in this case up to the time of the hearing, and was fully prepared to represent defendant. In addition, the state and the court were prepared to go forward and

---

4. Interestingly, this is not the first time that a counsel for this defendant has made a motion to withdraw on the eve of a trial. As noted above, his attorney in the probation violation hearing was denied a similar motion heard on the very day that the actual hearing was scheduled to take place.

the state had flown Deborah into Rhode Island from Minnesota at state expense to testify in the matter. In light of all that was before the trial justice at that time, we cannot say that he abused his discretion in denying the motion to withdraw.

■ When the trial justice denied the motion to withdraw, defendant immediately alleged that defense counsel had a conflict of interest stemming from her romantic relationship with his wife's former divorce attorney. He maintained that this relationship would interfere with her ability to be neutral and negatively would affect her representation of him. Defense counsel said she did not believe that there was a conflict and that she had no unfavorable bias toward defendant. In detailed discussion about her former relationship, she told the trial justice that she and the attorney in question merely were friends now, that she had never associated with him in a professional capacity and that they never had shared an office or any clients. She also said that about two months before the trial, when she became aware that there might be a conflict, she discussed the issue with defendant, who expressed his desire for her to continue her representation.

■ This "Court utilizes a different framework for determining a violation of the Sixth Amendment's guarantee to effective assistance of counsel" where the "attorney is alleged to have had a 'conflict of interest[.]'" *Simpson v. State*, 769 A.2d 1257, 1266 (R.I.2001) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346–47 (1980)). "When a defendant makes a timely objection at trial, alleging a conflict of interest based upon multiple representation, the Supreme Court has held that a state trial court must investigate whether the defen-

dant's Sixth Amendment rights are being violated." *Simpson*, 769 A.2d at 1267 n. 19 (citing *Cuyler*, 446 U.S. at 346, 100 S.Ct. at 1718, 64 L.Ed.2d at 345). "[T]he mere 'possibility' of a conflict of interest is not enough to impugn a criminal conviction under the Sixth Amendment[;]" instead, a criminal must demonstrate that an "actual conflict" exists that would " 'adversely affect[ ] his [or her] lawyer's performance.' " *Id.* at 1267. "[A]n 'actual' conflict of interest is one that requires that an attorney 'struggle to serve two masters.' " *Id.* (citing *Cuyler*, 446 U.S. at 349, 100 S.Ct. at 1718, 64 L.Ed.2d at 347).

When asked by the trial justice why he did not raise this issue earlier, defendant said that he did not know what he could do about the situation. The trial justice rejected this explanation stating: "[y]ou've known you could fire her all along." The defendant then implied that he could not fire her because "[n]ot too long ago we gave her a retainer and Monday we gave her more money[,]"[5] to which the trial justice responded "[w]hat did you give her the additional money for, knowing all this * * *? I have heard enough."

Realizing he was losing the battle, defendant tried one last time to persuade the court to grant the motion to withdraw—he alleged that there was a breakdown in communications between himself and defense counsel because she was not following his instructions and had never discussed the case with him.

Defense counsel emphatically declared that she had discussed the case with defendant, but could not go into the details of their communications because of the attorney-client privilege. The defendant declined the trial justice's invitation to waive the privilege to reveal the instructions that defense counsel allegedly had refused to

---

**5.** The defendant was referring to himself and his mother.

carry out. The trial justice again denied the motion to withdraw. In light of the foregoing, we cannot say that he abused his discretion.

### B. The Motion to Amend the Criminal Information

■ On September 24, 1996, defendant was charged by criminal complaint with felony witness intimidation in violation of § 11–32–5(b) in the District Court. A criminal information later was filed in the Superior Court on January 27, 1997. That information provided, in pertinent part, that defendant:

> "did, with specific intent to intimidate Deborah Burke, in respect to her filing assault charges, a criminal complaint testimony, did expressly or impliedly threaten to cause physical injury to Deborah Burke, in violation of G.L. § 11–32–5(a)[.]"

On February 27, 1997, defendant was arraigned in the Superior Court, where the case was assigned docket number P2/97–351A. "P2" numbers indicate that a felony has been charged.[6] On the following day the state filed notice that it would be seeking the imposition of an enhanced penalty pursuant to § 12–19–21, the habitual offender statute.

Pursuant to Rule 7 of the Superior Court Rules of Criminal Procedure, on the day before the trial was scheduled to begin, the state filed a motion to amend criminal information because of a typographical error. It asserted that although defendant was charged with felony witness intimidation in violation of § 11–32–5(b), the criminal information incorrectly cited to subsection (a) of the statute, a misdemeanor. After noting that no substantial rights of defendant had been prejudiced, and after finding that the error was "a typographical error" of "form," and that "[t]he crime described in the information is the same crime as that described in Section 11–32–5, Sub B [*sic*], of the General Laws[,]" the trial justice granted the motion. The defendant alleges that the amendment unconstitutionally added a different offense that substantially prejudiced him on the eve of trial.

■ The "amendment or judicial clarification of [a criminal information] containing erroneous statutory citations at or prior to trial [is permitted] because such defects are deemed to be merely formal." *State v. Donato*, 414 A.2d 797, 802 (R.I. 1980). Rule 7(c) "indicates that a nonprejudicial error in statutory citation is harmless to the extent that it will not jeopardize the state's case at any point before, during, or after a trial."[7] *Donato*, 414 A.2d at 802. "An indictment will not be dismissed, nor a conviction reversed, even when the state has intentionally refused or unintentionally failed to amend the indictment to correct such an error in citation." *Id.*

■ "To determine whether defendant suffered any prejudice or surprise as a result of either the error in statutory citation or the trial justice's correction, we must examine the [information]." *Id.* at

---

**6.** Misdemeanor charges are assigned a "P3" number.

**7.** Rule 7(c) of the Superior Court Rules of Criminal Procedure provides that an information "shall be sufficient if the offense is charged either (1) by using the name given to the offense by the common law or by statute, or (2) by stating the definition of the offense in terms of either the common law or the statute defining the offense, or in terms of substantially the same meaning." However, "[e]rror in the citation or its omission shall not be grounds for dismissal of the indictment, information, or complaint or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice." *Id.*

803. An information "must at least set forth the crime in terms of the statute defining the offense or in terms of substantially the same meaning." *Id. See also,* Rule 7(c)(2).

The information at issue alleged that defendant:

"did, with specific intent to intimidate Deborah Burke, in respect to her filing assault charges, a criminal complaint testimony, did *expressly or impliedly threaten to cause physical injury* to Deborah Burke, in violation of G.L. § 11–32–5(a)[.]"

Misdemeanor witness intimidation is contained in § 11–32–5(a), which provides:

"Any person who, by expressly or impliedly threatening to commit any unlawful act, maliciously and knowingly communicates with another person with the specific intent to intimidate a victim of a crime or a witness in any criminal proceeding with respect to that person's participation in any criminal proceeding shall be guilty of a misdemeanor * * *."

Section 11–32–5(b), the felony element of the statute, provides:

"Any person who, with the specific intent to intimidate a victim of a crime or a witness in any criminal proceeding with respect to that person's participation in any criminal proceeding, causes a physical injury to or damages the property of any person, or *expressly or impliedly threatens to cause physical injury* * * * is guilty of a felony * * *."

It is clear from juxtaposing these two sections with that of the criminal information that the state had charged defendant with felony witness intimidation in violation of § 11–32–5(b). The criminal information clearly required the state to prove that defendant "expressly or impliedly threaten to cause physical injury to Deborah Burke," an element not contained in subsection (a). In addition, when defendant was charged before the District Court, the written charge not only tracked the felony crime of witness intimidation, but also, it specifically referenced § 11–32–5(b), the felony section of the statute.

■ Next, we determine whether defendant suffered prejudice when the information was amended. We discern none from the record. Not only does the information clearly track the language of § 11–32–5(b) and had a docket number reserved for felonies, defendant also was notified that the state would be seeking an enhanced prison term under § 12–19–21, the habitual offender statute. That statute is available to the state only in the prosecution of a felony.

After reviewing the record, we agree that the reference to § 11–32–5(a) in the criminal information was a typographical error that did not prejudice defendant. Consequently, the trial justice did not err in granting the state's motion to amend the information.

## C. The Motion to Amend the Habitual Offender Notice.

■ On February 27, 1997, the day after defendant was arraigned, the state gave notice to him that it would seek to enhance his sentence, pursuant to § 12–19–21, the habitual offender statute. In its statement, the state referenced two previous offenses that defendant had committed; namely, breaking and entering a dwelling without the consent of the tenant and larceny over $500.

Subsequently, the state discovered that defendant had entered into a plea agreement with the prosecution to reduce the breaking and entering felony to a misdemeanor trespass. That offense would not satisfy the statute's requirement that a defendant must have two or more predicate felony convictions before his or her

sentence may be enhanced. At the pre-trial hearing on May 24, 1999, the state filed a motion to amend the habitual offender notice to replace the misdemeanor conviction with another felony conviction. That conviction was for assaulting a person over sixty years old. The defendant asserts that the trial justice erred in granting the state's motion to amend for three reasons: (a) the motion was not timely; (b) suspended sentences do not qualify as predicate offenses; and (c) the statute did not apply to him because he had not served any time on the second conviction before the witness intimidation occurred.

When we review trial court rulings on statutory interpretation, we do so on a *de novo* basis. *See Oliveira v. Lombardi*, 794 A.2d 453, 457 (R.I.2002) (citing *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001)). "When construing a statute 'our ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" *Id.* "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Solas v. Emergency Hiring Council of Rhode Island*, 774 A.2d 820, 824 (R.I.2001) (citing *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). "When we examine an unambiguous statute, 'there is no room for statutory construction and we must apply the statute as written.'" *Id.* (quoting *State v. DiCicco*, 707 A.2d 251, 253 (R.I.1998)). However, "in interpreting a legislative enactment, it is incumbent upon us to 'determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes.'" *Oliveira*, 794 A.2d at 457 (quoting *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987)). In doing so, we "will not construe a statute to reach an absurd result." *Town of North Kingstown v. Albert,*

767 A.2d 659, 662 (R.I.2001) (quoting *State v. Flores,* 714 A.2d 581, 583 (R.I.1998)).

The habitual offender statute, § 12–19–21, as amended by P.L.1988, ch. 402 § 1, provided in pertinent part:

> "(A) If any person who has been previously convicted in this or any other state of two (2) or more felony offenses arising from separate and distinct incidents and sentenced on two or more such occasions to serve a term in prison shall, after said convictions and sentences, be convicted in this state of any offense punished by imprisonment for more than one year, such person shall be deemed an 'habitual criminal.' * * *

> "(B) Whenever it appears a person shall be deemed an 'habitual criminal,' the attorney general, within forty-five (45) days of the arraignment, but in no case later than the date of the pretrial conference, may file with the court, a notice specifying that the defendant, upon conviction, is subject to the imposition of an additional sentence in accordance with section 12–19–21; * * * Upon any plea of guilty or nolo contendere or verdict or finding of guilty of the defendant, a hearing shall be held by the court sitting without a jury to determine whether the person so convicted is an habitual criminal. Notice thereof shall be given to the defendant and the attorney general at least ten (10) days prior thereto. Duly authenticated copies of former judgments and commitments which comprise the two (2) or more prior convictions and imprisonments required under section 12–19–21 shall be prima facie evidence of such former convictions and imprisonments."

"[T]he policy underlying habitual offender statutes 'reflects the Legislature's determination that a third or subsequent offense is more serious than a first

or second offense and accordingly should be punishable as such.'" *State v. Smith*, 766 A.2d 913, 924 (R.I.2001) (quoting *State v. Tregaskis*, 540 A.2d 1022, 1026 (R.I. 1988)). "Recidivist statutes are enacted in an effort to deter and punish incorrigible offenders. * * * They are intended to apply to persistent violators who have not responded to the restraining influence of conviction and punishment." *Id.* (quoting *State v. Conley*, 222 N.W.2d 501, 503 (Iowa 1974)).

#### (i) The timeliness of the motion

The defendant maintains that § 12–19–21 required the state to file its motion to amend its habitual offender notice either within forty-five days of the arraignment or no later than the date of the pretrial conference. Consequently, he asserts that the trial justice improperly granted the state's motion to amend the notice because of its untimeliness.

In granting the state's motion to amend, the trial justice observed that although it is preferable to include a statement of the prior felony convictions upon which it intends to rely when filing its notice, subsection (b) of the habitual offender statute does not specifically require the state to do so. He then found that defendant was not harmed by the amended notice and granted the motion.

■■■ "Pretrial notice enables a defendant to know the full range of potential punishment he [or she] faces upon conviction; fundamental fairness and due process require that allegations that would enhance a sentence be made before trial so that the defendant can evaluate his [or her] options." *State v. Benak*, 199 Ariz. 333, 18 P.3d 127, 130–31 (Ariz.Ct.App. 2001). "Notice * * * must be such that the defendant is not 'misled, surprised or deceived in any way by the allegations' of prior convictions." *Id.* at 131. When the state gives defense counsel a defendant's "rap sheet" showing his or her prior convictions, counsel cannot later claim surprise if the state later amends the notice. *See Mann v. State*, 291 Ark. 4, 722 S.W.2d 266, 267–68 (Ark.1987). The amended notice does "not change the nature or degree of the crime, but simply afford[s] evidence to increase the punishment." *Traylor v. State*, 304 Ark. 174, 801 S.W.2d 267, 269 (Ark.1990).

In this case defendant concedes that the notice filed by the state on February 27, 1997, was timely. At that point, he was made fully aware that the state would seek to enhance his sentence if a jury found him guilty of the underlying charge. He did not object to the notice by pointing out that it described only one felony conviction and that two felony convictions were required by the statute. In addition, in June 1997, almost two years before the trial commenced, defendant was given a complete list of his felony and misdemeanor convictions during discovery. Thus, the trial justice did not err when he found that defendant suffered no prejudice as a result of the amendment.

#### (ii) Suspended sentences as predicate offenses

■■■ The defendant also asserts that suspended sentences do not qualify as predicate offenses because § 12–19–21 requires a defendant actually to serve time in prison before the statute can be applied. We disagree.

The United States Supreme Court recently stated that "[a] suspended sentence is a prison term imposed for the offense of conviction. Once the prison term is triggered [by a probation violation], the defendant is incarcerated not for the probation violation, but for the underlying offense." *Alabama v. Shelton*, 535 U.S. 654, ——, 122 S.Ct. 1764, 1770, 152 L.Ed.2d 888, 898

(2002). Thus, when a defendant is found to be a probation violator, the trial justice has the discretion to lift the suspended portion from the previously imposed term of imprisonment. *See Hampton v. State*, 786 A.2d 375, 382 (R.I.2001) (observing that the trial justice "lift[ed] the suspension on the full fifteen-year sentence previously imposed on [the defendant]").

Since the habitual offender statute merely requires a person to have been at least twice convicted and sentenced "to serve a term in prison" and that a suspended sentence is the imposition of a term of imprisonment which is then suspended, the trial justice was correct when he ruled against defendant on this issue. Indeed, to adopt defendant's interpretation would lead to an absurd result in which a defendant might have prior felony convictions but because the resulting sentences of imprisonment were suspended, the state would be precluded from seeking to enhance the sentence of an additional felony conviction.

### (iii) The completion of the prior convictions

Since suspended sentences for felony convictions constitute predicate offenses for purposes of the statute, and considering the fact that a person need not have served time in prison on those suspended sentences, we reject the defendant's assertion that the statute is not applicable to him because he had served prison time on only one of the predicate felony convictions at the time he intimidated Deborah. *See State v. Tregaskis*, 540 A.2d 1022, 1025–26 (R.I.1988).

For the foregoing reasons, the defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

The papers in the case are remanded to the Superior Court.