[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court on the appeal of Long V. Mai ("Dr. Mai" or "Appellant") from a decision of the Rhode Island Department of Health ("DOH"). In two separate but related decisions, the DOH revoked the Appellant's license to practice acupuncture and prohibited him from engaging in unlicensed health care practices as defined by G.L. (1956) §23-74-1(a). Jurisdiction is pursuant to § 42-35-15.
 Facts and Travel
A brief recitation of the relevant factual and procedural history is necessary to evaluate the merits of these consolidated appeals. In August 1996, the DOH issued the Appellant a license to practice the healing art of acupuncture in the State of Rhode Island. From August 1996 until April 2000, the Appellant maintained an acupuncture practice located in Pawtucket, Rhode Island. In response to a complaint from the wife of a former patient, the DOH issued an Immediate Compliance Order/Summary Suspension pursuant to § 23-1-21.[1] The order suspended the Appellant's license to practice acupuncture and thereby prohibited him from engaging in any related activities.
In accordance with § 5-37.2-16, the DOH conducted a hearing to address the suspension of his license in November 2000. Among others, two of Appellant's former patients testified at the hearing. Mrs. Minh Hti Hoang Le ("Mrs. Le"), who filed the complaint with the DOH, testified first regarding the Appellant's treatment of her husband, Tan Trung Le ("Mr. Le"). Mrs. Le stated that her husband fell ill in June 1999 and subsequently underwent surgery for liver problems.
Through word of mouth and an advertisement that appeared in a Vietnamese newspaper, Mrs. Le learned of Dr. Mai. The advertisement contained a reproduction of Dr. Mai's license to practice acupuncture issued by the State of Rhode Island and stated that he specialized in cancer treatment. Mrs. Le averred that the advertisement gave her the impression that Dr. Mai could cure her husband's liver problems. When Mrs. Le contacted the Appellant, he did not have an available appointment for at least one month. Given the severity of Mr. Le's condition, Mrs. Le did not want her husband to wait to begin treatment.
After an extensive telephone conversation regarding her husband's condition, the Appellant offered to forego a physical examination and dispense herbal medications to treat her husband's cancer.[2] The Appellant charged Mrs. Le $2,500 for two bottles of herbal medication. Each bottle contained one hundred (100) pills. He insisted that Mrs. Le tender payment in the form of a money order. The Appellant directed Mr. Le to take four pills twice daily before meals. After consuming approximately twenty-four pills, Mr. Le's condition did not improve. Mrs. Le contacted the Appellant, who advised Mr. Le to stop taking the medication. The Appellant offered to see Mr. Le if Mrs. Le brought him another money order for $4000, but the Les could not afford the cost. On October 19, 1999, Mr. Le was admitted to the hospital and diagnosed with end stage liver cancer. He died the same day. After the Appellant refused to reimburse Mrs. Le for the remaining pills, she contacted the police and filed a complaint with the DOH.
Next, Ms. Hahn Phan testified regarding the treatment she received from the Appellant. Like Mrs. Le, Ms. Phan averred that she learned of the Appellant's practice by reading his advertisement in a Vietnamese newspaper. In 1998, she began undergoing treatment with the Appellant for the paralysis of her left side and an itchy rash. Although Ms. Phan advised the Appellant that she was also being treated by a physician and a physical therapist, Dr. Mai made no attempt to consult with either professional. The Appellant charged Ms. Phan $160 per month for the acupuncture treatments and approximately $800 per month for herbal medicines. Ms. Phan claimed that the Appellant represented that three months of treatment would enable her to hold things in her left hand, and six months would cure her paralysis completely. Despite the Appellant's promises, after three months of treatment, Ms. Phan had failed to recognize any improvement in her condition.
 Department of Health Decision
On December 15, 2000, the DOH entered a decision and order which denied Dr. Mai's appeal of the Immediate Compliance Order/Summary Suspension issued on April 26, 2000 and permanently revoked his license to practice acupuncture. The decision and order barred the Appellant from engaging in any activity which would constitute the practice of acupuncture as defined by § 5-37.2-2(1).[3]
With respect to the advertisements, the DOH found: "that [Dr. Mai's] advertisement and drug therapy practices [were] designed to provide him with financial benefit to the physical, emotional, and financial detriment of his patients." In re Matter of Long V. Mai, AH 00-12 at p. 26 (Dec. 15, 2000). The DOH concluded that the advertisements intentionally showcased the Appellant's state-issued license to bolster the false and deceptive claim that he specialized in cancer treatment. In addition, the DOH expressed concern over the Appellant's false representations as to the effective ability of herbal medication to treat and cure difficult diseases.
Relying on the evidence presented at the hearing, the DOH found that Dr. Mai engaged in dishonorable, unethical, and unprofessional conduct intended to deceive, defraud, or harm the public in violation of §§5-37.2-15(4), (9), (10), (13), and (14). The DOH further concluded that Dr. Mai posed an imminent danger to the health, safety, and welfare of his patients. Consequently, the DOH invoked its authority under § 42-35-14
to order the immediate suspension of his practice. Although the DOH acknowledged that the definition of acupuncture does not include the sale of herbs, the decision and order nonetheless prohibited Dr. Mai from dispensing herbal medication without first obtaining an order from the Director of the DOH.
 The `First' Appeal (C.A. 01-0166)
Pursuant to § 42-35-15, Dr. Mai filed an appeal challenging the decision and order of the DOH in Superior Court.[4] On appeal, Dr. Mai sought reversal of the DOH decision and reinstatement of his license to practice acupuncture. In addition, Dr. Mai requested a declaratory judgment that the DOH had "no authority to prohibit the Plaintiff from engaging in the sale of herbs and Chinese herbology in the State of Rhode Island." Plaintiff's Complaint, ¶ 4 (Jan. 11, 2001). In support of his request for relief, Dr. Mai advanced a tripartite argument. First, he argued that the DOH lacked the statutory authority to discipline him for conduct related to his practice of Chinese herbal medicine. Second, Dr. Mai contended that the DOH imposed an overly harsh penalty. Finally, he complained that he should be allowed to resume the sale of herbal medicine.
On June 17, 2002, this Court entered an order remanding the matter to the DOH for consideration of the Appellant's request for a declaratory judgment. The Court directed the DOH to hear the matter on an expedited basis. Further, the Court reserved judgment on the merits of the appeal until the DOH issued its ruling on the requested declaratory judgment.
 Declaratory Judgment Ruling
On September 8, 2003, the DOH issued a three-part ruling on the Appellant's request for a declaratory judgment as to whether the sale of herbs by Dr. Mai is subject to DOH regulation. First, citing § 23-74-1(b), the DOH held that Dr. Mai could lawfully market or distribute "food products, including dietary supplements as defined in the Federal Dietary Supplements Health and Education Act [see 21 U.S.C. § 321(ff)]." Further, the Appellant could educate and explain the uses of those products; however, education and explanation could not extend to medical diagnosis or treatment. See § 23-74-1(b). Second, Dr. Mai could engage in unlicensed health care practices as defined by § 23-74-1(a) only after obtaining an order from the Director of the DOH. See § 23-74-1(a)(4)(ii). Third, the DOH denied Dr. Mai's request for an order permitting Dr. Mai to engage in the practice of Chinese herbal medicine "for the reason that his license as an Acupuncturist was revoked for practices which constituted dishonorable, unethical and/or unprofessional conduct which deceives, defrauds and harms the public." The DOH predicated this denial on the fact that Dr. Mai's "practices and conduct constituted an imminent danger to the health, safety, and welfare of his patients." In Re: LongV. Mai Declaratory Judgment Ruling, at p. 6 (Sept. 8, 2003).
On September 25, 2003, the Appellant timely appealed the declaratory ruling of the DOH to the Superior Court.[5]
 Standard of Review
Section 42-35-15 confers jurisdiction on the Superior Court to entertain appeals from decisions of an administrative agency. Section42-35-15(g) delineates the applicable standard of review:
 "The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Although § 42-35-15 confers appellate jurisdiction on the Superior Court to review administrative decisions, that review is squarely confined to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision."Nickerson v. Reitsma, 853 A.2d 1202, 1205 (R.I. 2004) (quoting BarringtonSchool Committee v. Rhode Island State Labor Relations Board,608 A.2d 1126, 1138 (R.I. 1992)). The Court should not substitute its judgment for that of the agency and "must uphold the agency's conclusions when they are supported by legally competent evidence on the record."Interstate Navigation Co. v. Div. of Pub. Utils. Carriers of R.I.,824 A.2d 1282, 1286 (R.I. 2003).
Pursuant to Rule 42 of the Rhode Island Superior Court Rules of Civil Procedure, the Court has consolidated C.A. 01-0166 and C.A. 03-5094 for the purpose of decision as the appeals arise out of the same transaction and involve common questions of law and fact. First, the Court will review the declaratory judgment ruling issued by the DOH. After resolving the issues related thereto, the Court will revisit the arguments raised by the Appellant in his initial appeal.
 The `Second' Appeal (C.A. 03-5094)
When the Court engages in statutory interpretation, it must "determine and effectuate the Legislature's intent and attribute to the enactment the meaning most consistent with its policies or obvious purposes." JeffAnthony Props. v. Zoning Bd. of Review, 853 A.2d 1226, 1230 (R.I. 2004) (citing State v. Burke, 811 A.2d 1158, 1167 (R.I. 2002)). Although the Court is mindful, that when "the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference," the Court will not rubber-stamp a construction that is clearly erroneous or unauthorized. Labor Ready Northeast, Inc. v.McConaghy, 849 A.2d 340, 345 (R.I. 2004) (quoting In re Lallo,768 A.2d 921, 926 (R.I. 2001)). "[T]his court will not interpret legislative enactments in a manner that renders them nugatory or that would produce an unreasonable result." Defenders of Animals v. Departmentof Env.Mgt., 553 A.2d 541, 544 (R.I. 1989). After a review of the Declaratory Judgment ruling issued by the DOH, the Court finds that, although the agency reached the appropriate conclusion, the ruling posited an untenable interpretation of the underlying statute.
The Unlicensed Health Care Practices Act codified at § 23-74-1 et seq.
("the Act") governs the practice of Chinese herbal medicine.[6]
Although there is no case law interpreting the Act, the Court can determine its purpose from a cursory reading. The purpose of the Act is to provide a list of `unlicensed health care practices' for which the state has exempted `unlicensed health care practitioners' from DOH licensing requirements. Section 23-74-1(d) states: "Subject to the provisions of this chapter persons in Rhode Island are authorized to practice as unlicensed health care practitioners and receive remuneration for their services." In order to qualify as an unlicensed health care practitioner, an individual must satisfy the following criteria set forth in § 23-74-1(a)(4)(i)-(iv):
 (i) Is not licensed by a health-related licensing board or the director of health; or holds a license issued by a health-related licensing board or the department of health in this state, but does not hold oneself out to the public as being licensed or registered by the director or a health-related licensing board when engaging in unlicensed health care;
 (ii) Has not had a license issued by a health-related licensing board or the director of health revoked or suspended without reinstatement unless the right to engage in unlicensed health care practices has been established by order of the director of health;
 (iii) Is engaged in unlicensed health care practices; and
 (iv) Is providing unlicensed health care services for remuneration or is holding oneself out to the public as a practitioner of unlicensed health care practices."
On appeal, the Appellant renews his argument that the Court should read the requirements listed in § 23-74-1(a)(4)(i)-(iv) in the conjunctive. Relying on this interpretation, the Appellant contends that the Director of the DOH lacks the authority to require him to obtain an order to practice Chinese herbal medicine, because he does not qualify as an unlicensed health care practitioner. The Appellant argues:
 "Although Dr. Mai acknowledges that herbology and herbalism are "unlicensed health care practices" as defined in § 23-74-1(a)(3), and also recognizes that an Order is required before an "unlicensed health care practitioner" can engage in such practices, it is Dr. Mai's position that he is not an "unlicensed health care practitioner" within the statute's definition." Memorandum in Support of Long V. Mai's Appeal of the Decision of the Rhode Island Department of Health at p. 21.
Simply stated, the Appellant suggests that unlicensed health care practitioners must obtain a license to engage in unlicensed health care practices. Such a suggestion reveals a fundamental misunderstanding of the statute.
Adding to the confusion, the DOH advances an equally questionable interpretation of the requirements for an unlicensed health care practitioner. The DOH suggests that the word `or' should be substituted for the word `and' to avoid an absurd result. In her written decision, the Hearing Officer states: "I do not read the definition of [unlicensed] health care practitioner to exclude from the purview of Chapter 23-74 individuals with revoked licenses without reinstatement." Mai DeclaratoryJudgment Ruling at p. 5. The glaring problem with the DOH interpretation is that, although the definition does not exclude individuals with revoked or suspended licenses from the purview of the Act, it doesexpressly exclude these individuals from the class of persons who qualify as unlicensed health care practitioners.
"Generally, the conjunctive `and' should not be considered as the equivalent of the disjunctive `or.'" Earle v. Zoning Board of Review,96 R.I. 321, 324, 191 A.2d 161, 163 (1963). "Statutory phrases separated by the word "and" are usually to be interpreted in the conjunctive." 1A Norman J. Singer, Sutherland Statutory Construction § 21.14 (6th Ed.).
Given the misguided interpretations asserted, the Court feels the parties have missed the forest for the trees. The Court finds that the qualifications for an unlicensed health care practitioner should clearly be read in the conjunctive, because the substitution of the word `or' for the word `and' produces an absurd result.[7] The fact of the matter is that the Appellant does not fit within the definition of an unlicensed health care practitioner, because he does not satisfy § 23-74-1(a)(4)(ii). As such, § 23-74-1(a)(4)(ii) directs the Appellant to obtain an order from the Director of the DOH to practice Chinese herbal medicine.
The General Assembly included subsection (ii) to address the exact situation presented in the case at bar. Subsection (ii) prohibits individuals, who had licenses to practice more regulated medical disciplines suspended or revoked, from embarking on uncontrolled endeavors into the less regulated realm of unlicensed health care practices. For this very reason, subsection (ii) removes said individuals from the class of unlicensed health care practitioners, and requires those individuals to obtain permission to practice in the form of an order from the Director of the DOH. Given the circumstances presented in the instant case, the record evidence supports the Director's refusal to grant such an order.
Even assuming the Appellant did qualify as an unlicensed health care practitioner, and was not required to obtain an order to practice Chinese herbal medicine, the testimony presented to the DOH regarding his questionable advertising practices and exorbitant prices charged provides ample grounds to subject the Appellant to disciplinary action by the DOH. Section 23-74-4 includes the following grounds for disciplinary action: "(3) advertising that is false, fraudulent, deceptive, or misleading; . . . (12) obtaining money, property, or services from an unlicensed health care client, other than reasonable fees for services provided to the client, through the use of undue influence, harassment, duress, deception, or fraud; . . . (17) revocation, suspension, restriction, limitation, or other disciplinary against any health care license . . ." Section 23-74-8 vests the Director with the authority to suspend, revoke, or limit the disciplined individual's right to practice. Consequently, the Director of the DOH has the authority to regulate the Appellant's practice of Chinese herbal medicine regardless of whether the Appellant is considered an unlicensed health care practitioner.
Further, subsection (ii) specifically defeats the Appellant's argument raised in both appeals that the DOH lacks the statutory authority to regulate his practice of Chinese herbal medicine. By permanently revoking his license to practice acupuncture, the DOH had already determined that Dr. Mai engaged in deceitful, fraudulent, and harmful business practices at the expense of the public welfare. Said license revocation brought Dr. Mai within the scope of subsection (ii) which forbids him from engaging in `unlicensed health care practices' until he obtains an order from the Director of the DOH.
For the foregoing reasons, the Court not only affirms the declaratory judgment ruling issued by the DOH, but also rejects the Appellant's argument that the DOH lacked the requisite authority to regulate his practice of Chinese herbal medicine. Further, the Court agrees that the public welfare is best served by the refusal of the Director to grant Dr. Mai the ability to perpetrate fraud under the shelter of a DOH order.
 The Severity of the Penalty
The Court will now proceed to address the Appellant's challenge to the propriety of the penalty imposed by the DOH. Section 5-37.2-15 lists the grounds the DOH may rely on to suspend, revoke, or refuse to issue a license to practice the healing art of acupuncture. Section 5-37.2-15
provides in relevant part:
 "The department may either refuse to issue or may suspend or revoke any license for any one or any combination of the following causes:
 . . . .
 (4) Advertising by means of knowingly false or deceptive statement;
 . . . .
 (9) Engaging in any dishonorable, unethical, or unprofessional conduct which may deceive, defraud, or harm the public, or which is unbecoming a person licensed to practice under this chapter;
 (10) Using any false or fraudulent statement in connection with the practice of acupuncture or any branch of acupuncture;
 . . . .
 (13) Advertising in an unethical or unprofessional manner;
 (14) Obtaining a fee or financial benefit for any person by the use of fraudulent diagnosis, therapy, or treatment."
Additionally, section 5-37.2-7(3) gives DOH the authority to: "[p]romulgate rules and regulations, or either of them, not inconsistent with the provisions of this chapter. These rules and regulations may include a code of ethics regulating the professional conduct of licensees."
In mounting his challenge to the permanent revocation of his license, the Appellant raises two primary arguments. First, the Appellant argues that the DOH based its decision to revoke his license on the unethical sale and advertisement of Chinese herbal medicine rather than the practice of acupuncture. The Appellant contends that the DOH penalty related more to his professional integrity than his competency to practice.[8] Next, the Appellant contends that the permanent revocation of his license to practice acupuncture was unduly severe and constituted an abuse of discretion. He argues that the weight of the evidence does not support a finding that he was a threat to the public well being, or that he was an incompetent practitioner of acupuncture. To support this contention, the Appellant claims that the DOH did not accurately weigh the testimony of two former patients who testified as to the Appellant's competency. In addition, he contends that the testimony of Mrs. Le should not form the basis of his license revocation, because he did not perform acupuncture on her husband.
The Court is wholly unconvinced by the Appellant's assignments of error. First, the Appellant focuses the Court's attention on the testimony of Mrs. Le but completely disregards the testimony of Ms. Phan. Although the Appellant did not perform acupuncture on Mr. Le, he did use acupuncture to treat Ms. Phan. In fact, he assured Ms. Phan that acupuncture treatment coupled with Chinese herbal medicine would alleviate her paralysis. Obviously, the Appellant could not deliver on this assurance. Consequently, the Court finds that the testimony of Ms. Phan provided the DOH with a more than adequate foundation to conclude that the Appellant's representations to Ms. Phan that acupuncture would `cure' her paralysis constituted dishonorable, unethical, and unprofessional conduct intended to deceive, defraud, and harm. Further, Dr. Mai employed false and fraudulent statements, diagnosis, therapy, and treatment to attain exorbitant fees. Given the record evidence of his repugnant behavior, the DOH had ample reason to revoke Dr. Mai's license to practice acupuncture.
As to the severity of the penalty, the Court finds that the DOH had overwhelming evidence to conclude that the Appellant preyed upon vulnerable individuals in times of personal crisis. He made numerous empty promises to extort disproportionate sums of money for the services he provided. To add insult to injury, he published advertisements that contained reproductions of his State-issued license to practice acupuncture to lend credence to this disgusting operation. As such the record evidence demonstrates the necessity of the penalty to protect the public from potential harm at the hands of Dr. Mai. Therefore, the Court not only refuses to disturb the decisions and orders of the DOH but, rather, wholly endorses the penalty imposed on Dr. Mai.
 Conclusion
Given Ms. Phan's testimony and the evidence related to the advertisements, the Court holds that there is overwhelming evidence in the record to demonstrate violations of § 5-37.2-15 (4), (9), (10), (13), and (14). Accordingly, the DOH decision to permanently revoke Dr. Mai's license was neither an abuse of discretion nor outside the scope of its jurisdiction. Rather, both the revocation of Dr. Mai's license and the denial of his request for an order to practice Chinese herbal medicine were appropriate under the circumstances.
Therefore, the Court affirms the decision of the DOH to permanently revoke Dr. Mai's license to practice acupuncture. The Court also affirms the refusal of the Director of the DOH to issue an order permitting Dr. Mai to practice Chinese herbal medicine.
[1] Section 23-1-21 gives the Director of the Department of Health the authority to issue an immediate compliance order without prior notice of violation or hearing "[w]henever the director determines that there exists a violation of any law, rule, or regulation within the jurisdiction of the director which requires immediate action to protect the health, welfare, or safety of the public or any member of the public."
[2] It should be noted that the Appellant maintained records of Mr. Le's treatment which contained progress notes and entries for October 15 and 19, 1999.
[3] Section 5-37.2-2(1) defines acupuncture as "the insertion of needles into the human body by piercing the skin of the body, for the purpose of controlling and regulating the flow and balance of energy in the body."
[4] This appeal was assigned civil action number 01-0166.
[5] This appeal was assigned civil action number 03-5094.
[6] The General Assembly enacted the Unlicensed Health Care Practices Act in June 2002.
[7] A simple illustration will serve to demonstrate the absurd result of substituting `or' for `and' in the abovereferenced statute. If an individual could be classified as an unlicensed health care practitioner simply by engaging in unlicensed health care practices (subsection (iii)), subsections (i), (ii), and (iv) of the statute would no longer act as qualifications but would, instead, be worthless. The Court refuses to agree that the General Assembly intended such a result.
[8] The Appellant cited a myriad of cases from outside the jurisdiction which dealt with penalties imposed on medical professionals for ethics violations. The Court felt that the cases were inapposite to the situation at bar, and reached the respective Courts via different procedural paths than the case at bar. As such, the Court does not feel compelled to address the Appellant's arguments related thereto.