STATE

v.

Oliver S. LYONS.

No. 2010–44–C.A.

Supreme Court of Rhode Island.

Jan. 27, 2012.

Virginia M. McGinn.

1. The defendant originally challenged the trial justice's denial of his Super. R.Crim. P. 35 motion on two additional grounds: (1) that the state provided untimely notice under G.L. 1956 § 12–19–21 that it intended to seek a habitual offender sentencing enhancement; and (2) that the Attorney General's role in moving that a defendant be declared a habitual offender violates the separation of powers.

Susan B. Iannitelli

### ORDER

This case came before the Supreme Court on December 6, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The defendant, Oliver S. Lyons (Lyons or defendant), was convicted of assault, in violation of G.L.1956 § 11–5–8.1, for throwing a cup of urine and feces at a correctional officer at the Adult Correctional Institutions (ACI). The defendant was sentenced to five years for the assault, and he also was declared to be a habitual offender, garnering him a consecutive sentence of twenty-five years at the ACI, with two years to serve. Lyons moved to vacate his habitual offender status pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure; the trial justice denied his motion. Lyons appeals from that ruling and contends that his two earlier felony convictions were not appropriate predicate offenses for purposes of the habitual offender statute.[1] Having carefully reviewed the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown; thus, the appeal may be decided at this time. We affirm the judgment of the Superior Court.

### Facts and Travel

In 1998, defendant entered a plea of *nolo contendere* to manufacturing or delivering a controlled substance and received a three-year suspended sentence, with pro-

The defendant has since withdrawn his timeliness argument. Because the separation of powers argument was not raised in the Superior Court, we consider it waived and need not discuss that issue any further. *See State v. Bido*, 941 A.2d 822, 828 (R.I.2008) ("this Court's 'raise-or-waive' rule precludes our consideration of an issue that has not been raised and articulated at trial").

bation. In 2000, defendant was convicted of manufacturing or delivering a controlled substance, and this time was sentenced to six years imprisonment, with ninety days to serve and sixty-nine months suspended, with probation. The defendant subsequently was arrested and charged with felony domestic assault arising from an incident in April 2000. He was found to have violated the terms and conditions of his probation in the 2000 controlled substance case and was ordered to serve sixty-nine months at the *ACI*. In February 2005, while defendant was serving that sentence, a jury found him guilty of assaulting a correctional officer with bodily fluids, a conviction that this Court affirmed in *State v. Lyons*, 924 A.2d 756, 766 (R.I. 2007). At the time of sentencing on the assault charge, Lyons was declared to be a habitual offender based on his convictions for the 1998 and 2000 felony drug offenses. The defendant filed a Rule 35 motion, in which he sought to vacate his habitual offender status. After a hearing at which defendant appeared *pro se*, the trial justice denied defendant's motion.[2]

The defendant timely appealed, asserting that he was denied due process of law because his 1998 felony drug conviction was considered one of the predicate offenses, notwithstanding that defendant did not serve time in prison on that charge.[3]

**2.** Initially, the trial justice *sua sponte* denied three Rule 35 motions filed by defendant. The defendant's appeal asserting that it was error for the trial justice to deny defendant's motions without affording him a hearing was sustained based on the state's confession of error. *State v. Lyons*, 961 A.2d 320, 320 (R.I.2008) (mem.). The case was remanded for the requisite hearing, and it is that decision that is before the Court. *See* id.

**3.** The defendant also seems to contend that his 2000 felony domestic assault charge, of which he subsequently was acquitted, constituted one of the predicate offenses. The rec-

Because we are of the opinion that defendant's argument lacks merit, we affirm the judgment of the Superior Court.

## Analysis

The habitual offender statute, G.L.1956 § 12–19–21(a), states in pertinent part that:

"If any person who has been previously convicted in this or any other state of two (2) or more felony offenses arising from separate and distinct incidents and sentenced on two (2) or more occasions to serve a term in prison is, after the convictions and sentences, convicted in this state of any offense punished by imprisonment for more than one year, that person shall be deemed a 'habitual criminal.'"

In *State v. Burke*, 811 A.2d 1158, 1168–69 (R.I.2002), we explicitly addressed the issue of whether a conviction for which a suspended sentence was imposed could qualify as a predicate conviction for purposes of achieving habitual offender status. There, we held that such convictions properly may constitute predicate offenses because "the habitual offender statute merely requires a person to have been at least twice convicted and sentenced 'to serve a term in prison' and that a suspended sentence is the imposition of a term of imprisonment which is then suspended * * *."[4]

ord does not support defendant's contention. As noted by the trial justice, the habitual offender notice with which defendant was presented had appended to it the Superior Court docket sheets for the 1998 and 2000 drug offenses, not the domestic assault charge.

**4.** In *Alabama v. Shelton*, 535 U.S. 654, 662, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002), the United States Supreme Court stated that "[a] suspended sentence is a prison term imposed for the offense of conviction. Once the prison term is triggered [by a probation violation], the defendant is incarcerated not for the pro-

*Id.* at 1169. This Court's interpretation of § 12–19–21(a), as articulated in *Burke,* avoids the "absurd result in which a defendant might have prior felony convictions but because the resulting sentences of imprisonment were suspended, the state would be precluded from seeking to enhance the sentence of an additional felony conviction." *Burke,* 811 A.2d at 1169.

The defendant asks us to revisit our holding in *Burke.* We decline to do so. "[T]he policy underlying habitual offender statutes 'reflects the Legislature's determination that a third or subsequent offense is more serious than a first or second offense and accordingly should be punishable as such.'" *Burke,* 811 A.2d at 1167–68 (quoting *State v. Smith,* 766 A.2d 913, 924 (R.I.2001)). Habitual offender statutes are meant "to deter and punish incorrigible offenders. * * * They are intended to apply to persistent violators who have not responded to the restraining influence of conviction and punishment." *Id.* at 1168 (quoting *Smith,* 766 A.2d at 924).

We are of the opinion that our holding in *Burke* well serves the policy rationale behind the habitual offender statute. The defendant consistently has displayed contempt for the law, and for officers of the law. He has been convicted of multiple felony offenses.[5] After a history of criminal behavior, the defendant threw feces at a correctional officer, and the court threw the book at him. We see no reason to disturb the trial justice's sentencing judgment.

### Conclusion

For the reasons stated above, we affirm the judgment of the Superior Court. The papers in this case may be remanded to the Superior Court.

Justice Indeglia did not participate.

---

bation violation, but for the underlying offense." *See also State v. Burke,* 811 A.2d 1158, 1168 (R.I.2002).

**5.** The defendant's refusal to conform his behavior to the requirements of the law amply was demonstrated in this case. When he was sentenced for committing assault with bodily fluids, the defendant challenged the trial justice to sentence him to the maximum—though the trial justice graciously declined to do so— and told the trial justice that "I may get five years throwing bodily fluid through your head * * *. You're a joke."